[Civ. No. 22588.   First Dist., Div. One.   June 1, 1966.]

M. B. RICH, Plaintiff and Appellant, v. STATE BOARD OF OPTOMETRY et al., Defendants and Respondents.

Jefferson E. Peyser for Plaintiff and Appellant.

Thomas C. Lynch, Attorney General, and Wiley W. Manuel, Deputy Attorney General, for Defendants and Respondents.

MOLINARI, J.—This is an appeal by M. B. Rich, O.D., from the judgment of the trial court denying his petition for a writ of mandate to compel the State Board of Optometry[1] to reissue and reactivate three branch office licenses which Rich had previously possessed. Rich contests the propriety of the trial court's determination upholding the Board's decision that he is not entitled to the reactivation of these branch office licenses and, additionally, Rich contends that the trial court's finding that he had not offered to pay various fees in connection with the issuance of these branch office licenses is not supported by the evidence.

### Procedural and Factual Background

On September 24, 1963 Rich applied to the Board for the issuance of branch office licenses at the following addresses: 824 MacDonald Avenue, Richmond, California; 430-432 East Main Street, Stockton, California; and 807 K Street, Sacramento, California. These proposed new branch office locations were expressly stated to be "in place of" those three branch offices which Rich had formerly operated at 810 MacDonald Avenue, Richmond; 432 East Main Street, Stockton; and 921

---

[1]The petition was also directed to Dale B. Freeberg, Stanley D. Braff, Arthur B. Emmes, Max Blechman, Morris Kirschen, and Gabriel Lizer, members of the State Board of Optometry, and to J. R. Patterson, executive secretary of the Board. Our references hereafter to the "Board" include these individuals as well.

K Street, Sacramento. Upon a statement of issues filed by the Board praying that a hearing be held thereon and that the respective applications be denied, a hearing was held before a hearing officer of the Office of Administrative Procedure. The hearing officer recommended that the applications be denied and his proposed decision was adopted as the decision of the Board to be effective April 8, 1964. On May 1, 1964, Rich filed in the superior court a petition for issuance of a peremptory writ of mandate to compel the Board to issue the requested branch office licenses to him. When the alternative writ came on for hearing in the trial court, the matter was submitted upon the record of the proceedings before the Board.[2] Subsequently the trial court entered judgment denying Rich the relief which he sought. The bases of both the trial court's and the Board's decisions, as contained in their respective findings of fact and conclusions of law, were (1) that Rich had in 1960 discontinued his practice of optometry at his three previously-licensed Richmond, Stockton and Sacramento branch offices and had surrendered to the Board his branch office licenses for these three locations; and (2) that Rich had failed to pay the fees requisite to the reactivation of these three licenses. The evidence adduced at the administrative hearing upon which these conclusions of the Board and the trial court were based consists of the following:

As of October 1, 1959 Rich, an optometrist duly licensed by the State of California, operated, in addition to his principal office for the practice of optometry, 13 branch offices. Three of these branch offices were located at 810 MacDonald Avenue, Richmond; 432 East Main Street, Stockton; and 921 K Street, Sacramento. In July and August 1960 Rich's leases for these three premises were terminated by the lessor and Rich ceased his practice at these locations. At the same time Rich surrendered to the Board his branch office licenses for these three locations. After the licenses were returned to the Board, they remained continuously in the custody and control of the Board. Rich did not seek transfer of these licenses to other premises nor did he make any effort to relocate in Richmond, Stockton or Sacramento. In addition, although Rich's applications for the reactivation of these three branch office licenses were accompanied by a check in the amount of $30, during the years 1961, 1962 and 1963 Rich did not pay any branch office

---

[2]The proceeding before the trial judge constituted a trial de novo. (See *Laisne* v. *California State Board of Optometry,* 19 Cal.2d 831, 833-834 [123 P.2d 457].)

license fees in connection with the three licenses which he returned to the Board. Rich did testify, however, that he was ready, willing, and able to pay any fees necessary for the reactivation of these three branch office licenses. Finally, with regard to the branch offices for which Rich sought to reactivate his former licenses, it was stipulated by the parties that it would be physically impossible for Rich to be in attendance at each of these locations 50 percent of the time during which each was open for business.

## Applicable Law

The statute which controls the disposition of this appeal is Business and Professions Code section 3077.[3] This section, following the 1959 amendments thereto, provides in relevant part as follows: ". . . (f) On and after January 1, 1957, no branch office may be opened or operated without a branch office license. . . . On or after October 1, 1959, no more than one branch office license shall be issued to any optometrist or to any two or more optometrists, jointly. . . . (i) Nothing in this chapter shall limit or authorize the board to limit the number of branch offices which are in operation on October 1, 1959 and which conform to the provisions of this chapter, nor prevent an optometrist from acquiring any branch office or offices of his parent. The sale after October 1, 1959 of any branch office shall terminate the privilege of operating such branch office and no new branch office license shall be issued in place of the license issued for such branch office, unless the branch office is the only one operated by the optometrist or two or more optometrists jointly. Nothing in this chapter shall prevent an optometrist from owning, maintaining or operating more than one branch office if he is in personal attendance at each of his offices fifty percent (50%) of the time during which such office is open for the practice of optometry."

We have recently had occasion to consider section 3077, its effect and application in *Rich v. State Board of Optometry*, 235 Cal.App.2d 591 [45 Cal.Rptr. 512].[4] There the petitioners, Dr. Rich and Drs. Oakley and Layne, sought to transfer two existing branch offices to different locations. Upon the Board's refusal to transfer their licenses to the new locations or to issue them new licenses for the new premises, the petitioners obtained a writ of mandate from the trial court compelling the

[3]Unless otherwise indicated, all statutory references are to the Business and Professions Code.

[4]In the opinion rendered in that case we discussed section 3077, its purpose, and the legislative history leading to its amendment in 1959.

Board to issue the requested branch office licenses for the new locations. In affirming the judgment of the trial court, we held that under the so-called "grandfather clause" of section 3077, i.e., subdivision (i), an optometrist may relocate a branch office which was in existence on October 1, 1959, and that the Board must provide a means by which such a relocated branch office may effectively be licensed, either by allowing the optometrist to transfer his existing branch office license or by issuing him a new branch office license.

### *The Finding That the Licenses Could Not be Reactivated*

Rich contends that under subdivision (i) of section 3077 he is entitled to operate the same number of branch offices which he operated on October 1, 1959; that on that date he maintained 13 branch offices, including the three which were subsequently closed for business; that since closing his offices in Richmond, Stockton and Sacramento he has maintained and operated only 10 branch offices; and that he is thus entitled to reactivate the Richmond, Stockton and Sacramento branch office licenses, bringing his total number of branch offices to 13. The issue, therefore, is whether the Board, either by refusing to reactivate Rich's three previously-held branch office licenses or by refusing to issue him three new branch office licenses for the practices which he seeks to establish in Richmond, Stockton and Sacramento, has authority to refuse Rich branch office licenses at these locations.

The essence of Rich's contention is that in *Rich* this court held that under section 3077 an optometrist has a vested right or privilege to operate the same number of branch offices which he operated on October 1, 1959, and that the only manner in which he can lose this right or privilege as to any branch office is by the *sale* of the business operated at such branch office location. In support of this contention he argues with fervor that in the prior *Rich* case we noted the legislative history of section 3077 and in particular the significance of the deletion from the final form of the statute as enacted of the phrase "removal or abandonment" which followed the word "sale" in the amendment to subdivision (i) as originally introduced in the Legislature. In *Rich* we stated that "The rejection by the Legislature of a specific provision contained in an act as originally introduced is most persuasive to the conclusion that the act should not be construed to include the omitted provision. [Citations.]" (P. 607.) We also noted in that case that the legislative debate involving such deletion was "likewise indicative of the Legislature's intent that the number of branch

offices *in operation* on October 1, 1959 would not be diminished except where a branch office was sold.'' (Italics added; p. 607.)

The crucial difference between the facts of the instant case and those of the prior *Rich* case is that there the petitioners sought to transfer branch office licenses for two of their *existing* branch offices. In holding that they were entitled to such relief, we stated that ''optometrists are entitled to *continue to maintain and operate* as many branch offices as they operated on October 1, 1959.'' (Italics added; p. 607; see also p. 608.) In the instant case, on the other hand, although Rich operated 13 branch offices as of October 1, 1959, he subsequently discontinued his practice at three of these locations and surrendered his branch office licenses for these three locations to the Board. He is thus not seeking to continue operation of these three branch offices but rather to start anew three branch office practices in the place of the three practices which he abandoned in 1960.

■ As we read subdivision (i) of section 3077 it allows an optometrist to *continue to maintain* the same number of branch offices which he operated as of October 1, 1959, without regard for the fact that this number may be in excess of the number currently allowed by section 3077. The ''grandfather clause'' protection exists, however, only so long as the optometrist *continues to maintain* this same number of branch offices. Once he ceases doing business at one of his branch offices, without transferring his practice to another location, he loses the protection afforded by the ''grandfather clause'' of section 3077. ■ Moreover, we think that this interpretation of section 3077 is fortified by the purpose of the ''grandfather clause,'' which, as stated in *Golden Gate Scenic Steamship Lines, Inc.* v. *Public Utilities Com.,* 57 Cal.2d 373, 379 [19 Cal.Rptr. 657, 369 P.2d 257], is ''to give those engaged in a business being brought under regulation the right to continue their existing business without being subjected to certification requirements that would be applicable if the business were then being started for the first time.'' (See also *Harris* v. *Alcoholic Beverage etc. Appeals Board,* 61 Cal.2d 305 [38 Cal.Rptr. 409, 392 P.2d 1].) Such a purpose clearly does not extend to a situation like that involved in the instant case where Rich, by virtue of closing three of his branch offices, no longer possesses the vested existing interest or competitive advantage which the ''grandfather clause'' seeks to protect.

■ In the light of the foregoing, our holding in *Rich* that an optometrist does not lose the protection of the "grand-father clause" provision where he removes or abandons a branch office must be construed to mean that he does not lose the right or privilege of maintaining and operating such branch office because of such removal or abandonment *where* he indicates and evinces an intention and desire to *relocate* such branch office by the timely application to the Board for a transfer of the branch office license of the office removed or abandoned or for the issuance of a new branch office license to the new location. In the instant case no such intention or desire was evinced; rather it is clear that the intention was not to relocate the subject branch offices but to completely abandon and cease their operation.

■ In sum, we are of the opinion that Rich's right to establish and operate branch office practices in Richmond, Stockton and Sacramento is no greater than that of any other optometrist who desires to establish a new branch office. In both situations the optometrist is attempting to obtain a license for a new branch office. In both cases, therefore, the Board may refuse to license such a branch office unless it is the only branch office which the optometrist operates (§ 3077, subd. (f)) or unless the optometrist will be in personal attendance at this branch office 50 percent of the time during which such office is open for business. (§ 3077, subd. (i).) No exemption from these requirements should exist in favor of Rich simply by virtue of the fact that he formerly maintained and operated three additional branch offices which, had he continued to maintain them, would have been exempt from these provisions of section 3077. Accordingly, we hold that under section 3077 the Board had authority to properly deny Rich's application for the requested branch office licenses.

■ Aside from relying on the provisions of section 3077 in contending that he is entitled to obtain the three branch office licenses which he requested from the Board, Rich contends that the Board should be estopped from denying the re-activation of these licenses. In this regard Rich points to the Board's policy that a branch office license is not transferable and that it must be surrendered to the Board upon discontinu-ance of the branch office for which the license was issued. Rich contends that since he surrendered the branch office licenses for his practices in Richmond, Stockton and Sacramento in an effort to comply with the Board's directives, the Board should not now be allowed to refuse Rich's applications for reactiva-

tion of these branch office licenses on the basis that these same licenses had previously been surrendered by Rich. We find no merit to this argument. As we have previously concluded, Rich is precluded under the provisions of section 3077 from establishing any new branch offices. Our conclusion in this regard is not based solely on the fact that Rich previously surrendered three branch office licenses to the Board but is also based upon the fact that he discontinued his practices at the Richmond, Stockton and Sacramento branch offices. Accordingly, our conclusion would be the same even if Rich had retained in his possession the branch office licenses issued in connection with his practices at these locations.

Moreover, the record does not affirmatively show that Rich surrendered the subject branch office licenses in reliance on the Board's representation that these licenses were not transferable and that they had to be returned to the Board upon the discontinuance of the practices for which they were issued. From the fact that in the prior *Rich* case the petitioners, including Rich, chose to litigate the question of whether branch office licenses were transferable, it is reasonable to conclude that Rich did not surrender the three branch office licenses involved in this action because of the Board's policy that branch office licenses were not transferable. Rather it would appear that Rich surrendered these branch office licenses because he no longer chose to use them. Such a conclusion is buttressed by Rich's admission at the administrative hearing that following surrender of the three licenses he made no effort to relocate his Richmond, Stockton or Sacramento practices; by the uncontradicted evidence that no business was conducted by him in these three cities after the leases to the locations were terminated; and by the fact that, while Rich maintained his license fee payments for the other 10 branches throughout the intervening years, he did not pay or tender the license fees for these three locations in the years 1961, 1962 and 1963 other than the fees tendered in connection with the application here under consideration. We conclude, therefore, that there can be no element of estoppel in the instant case for the reason that the record fails to indicate that Rich relied upon the purported representations of the Board to the effect that branch office licenses were not transferable.

### The Finding Concerning the Nonpayment of Fees

The trial court found that Rich did not offer or tender to the Board ''any and all license fees, reinstatement fees, and/or penalties required pursuant to law for the issuance of said

branch office licenses. . . ." This finding is attacked by Rich as being unsupported by the evidence. The subject finding is apparently responsive to the Board's contention that even if, under section 3077, Rich would be entitled to the reactivation of the branch office licenses which he formerly possessed for his practices in Richmond, Stockton and Sacramento, his nonpayment of the fees in connection with these branch office licenses for the years 1961 through 1963 worked a suspension of the licenses which could not be removed until such fees were paid. The propriety of this finding need not be considered by us, however, in view of our conclusion that as to the three branch office licenses which Rich seeks to have reactivated he is not within the protective provisions of the "grandfather clause" of section 3077 and therefore is not entitled to such branch offices. Since the finding to which Rich objects as being unsupported by the evidence relates to the purported nonpayment of the requisite license fees, the correctness of this finding is immaterial to the outcome of this appeal.

The judgment is affirmed.

Sullivan, P. J., and Sims, J., concurred.

A petition for a rehearing was denied June 15, 1966, and appellant's petition for a hearing by the Supreme Court was denied August 24, 1966. Mosk, J., did not participate therein.