THE GLASTONBURY COMPANY ET AL. *v.* PETER W.
GILLIES, INSURANCE COMMISSIONER, ET AL.
(13431)

PETERS, C. J., SHEA, CALLAHAN, GLASS and COVELLO, Js.

Argued October 5—decision released November 15, 1988

*Jane D. Comerford,* assistant attorney general,
with whom, on the brief, was *Joseph I. Lieberman,*
attorney general, for the appellant (named defendant).

*Daniel L. FitzMaurice,* with whom were *Harvey A.
Katz* and, on the brief, *Allan B. Taylor,* for the
appellees (plaintiffs).

*Peter T. Zarella* and *Steven W. Varney* filed a brief for the department of banking as amicus curiae.

CALLAHAN, J. This case involves the eligibility of a subsidiary of a lending institution and one of its officers to be licensed to sell insurance under the provisions of General Statutes § 38-72a (b) and (c). Under such provisions the state insurance commissioner cannot issue a license to sell fire, casualty, life or health insurance to a bank subsidiary or to any of its officers or employees. Such organizations, however, lawfully licensed on October 1, 1973, in the case of fire and casualty insurance, and on October 1, 1980, in the case of health and life insurance, are exempt or "grandfathered" from the prohibitions of § 38-72a.[1] The prin-

---

[1] "[General Statutes] Sec. 38-72a. LICENSURE FOR SALE OF FIRE, CASUALTY, LIFE AND HEALTH INSURANCE PROHIBITED TO LENDING INSTITUTIONS AND BANK HOLDING COMPANIES. (a) As used in this section: (1) 'Lending institution' means any institution that accepts deposits and lends money, including banks, savings and loan associations and credit unions, but not including insurance companies; (2) 'affiliate,' 'subsidiary' and related terms shall be defined as in section 38-39a; (3) 'bank holding company' means and includes the definition of such term in Section 2 of an Act of Congress entitled the 'Bank Holding Company Act of 1956,' as amended; (4) 'commissioner' means the insurance commissioner.

"(b) No license authorizing the sale of fire and casualty insurance shall be issued pursuant to section 38-72 to (1) a lending institution, or (2) a bank holding company, subsidiary or affiliate of a lending institution, or (3) an officer or employee of such lending institution, bank holding company, subsidiary or affiliate, provided this subsection shall not apply to any such person or organization which was lawfully licensed to sell fire and casualty insurance on October 1, 1973.

"(c) No license authorizing the sale of life and health insurance shall be issued pursuant to section 38-72 to (1) a lending institution, or (2) a bank holding company, subsidiary or affiliate of a lending institution, provided this subsection shall not apply to any such organization which was lawfully licensed to sell life and health insurance on October 1, 1980, or to any savings bank with respect to the sale of life insurance policies or annuity contracts issued pursuant to section 36-142. Life and health insurance shall not include credit life insurance as defined in section 38-250 or group life and disability insurance sold in connection with real estate mortgage loans.

"(d) The insurance commissioner may promulgate regulations in order to effectuate the purposes of this section."

cipal issue raised on appeal is whether the grandfather clauses in § 38-72a (b) and (c) require an exempt bank subsidiary to be licensed continuously in order to remain exempt under the statute.

The plaintiffs, The Glastonbury Company, a subsidiary of the Glastonbury Bank and Trust Company, and its vice president and secretary, Albert S. Birrell, appealed to the Superior Court from a decision of Peter W. Gillies, the state insurance commissioner (commissioner), rescinding their licenses to sell insurance. After a hearing, the trial court ruled in the plaintiffs' favor. The insurance commissioner appealed to the Appellate Court and, thereafter, this court transfered the appeal to itself pursuant to Practice Book § 4023. On appeal, the state department of banking has filed a brief as amicus curiae in support of the plaintiffs.[2] We find no error.

The facts, as stipulated to by the parties, indicate that the named plaintiff, The Glastonbury Company (company), was licensed to sell fire and casualty insurance as of October 1, 1973, and life and health insurance as of October 1, 1980, thereby making it an exempt or "grandfathered" organization under both subsections (b) and (c) of § 38-72a. In 1974, however, the company sold its entire insurance business and contractually promised not to engage in that business in Glastonbury or in any contiguous towns for at least five years. With

---

[2] This case presents an unusual situation in that the insurance commissioner believes that the plaintiffs' licenses should be rescinded while the department of banking has filed a brief as amicus curiae in support of the plaintiffs. Given the fact that the two state agencies are on opposite sides of the fence as to the issue at hand, there may be some question as to which agency's interpretation of the statute should be given deference. Because we are presented with a question of law turning solely on the interpretation of a statute that has never before been interpreted in any administrative or judicial proceeding, we need not give special deference to either agency's interpretation. See *State Medical Society* v. *Board of Examiners in Podiatry,* 208 Conn. 709, 717–19, 546 A.2d 830 (1988); *Schlumberger Technology Corporation* v. *Dubno,* 202 Conn. 412, 423, 521 A.2d 569 (1987).

the exception of a license to sell life and health insurance, all the company's licenses were, at that time or shortly thereafter, either transferred in the sale, cancelled or allowed to lapse. The company did continue to hold a viable license to sell life and health insurance on October 1, 1980. It allowed that license to lapse, however, on May 1, 1981.[3]

In 1983, approximately one year after its license to sell life and health insurance lapsed, the company was relicensed by the insurance commissioner as an agency for both of these lines. In 1984, after approximately a nine year lapse, the company was relicensed by the commissioner as an agency for fire and casualty insurance. The company was also relicensed as a broker in all lines of insurance in 1984. Birrell was licensed as a broker in fire and casualty insurance in 1984, as an agent in 1985, and has been employed by the company since 1985.

On February 24, 1987, the commissioner rescinded all the plaintiffs' insurance licenses stating that they had been "issued in error" as the company was in violation of § 38-72a. The commissioner concluded that, although the company had been, at one time, exempt from the prohibitions of § 38-72a, it had lost its exempt status because it failed to hold its licenses continuously after the dates for exemption set forth in the statute. Since the company was a nonexempt subsidiary of a lending institution under § 38-72a, the commissioner also concluded that Birrell, as an officer or employee of a nonexempt subsidiary, had been issued his licenses in error. In rescinding the plaintiffs' licenses, the commissioner rejected the plaintiffs' claim that his prior issuance of the licenses estopped him from doing so.

---

[3] Although there was a lapse in the company's licensing, the commissioner made no finding of abandonment. Further, there is nothing in the corporate minutes of The Glastonbury Bank and Trust Company to indicate that it ever intended to abandon the insurance business.

The plaintiffs appealed the commissioner's decision to the trial court asserting that the "[commissioner's] construction of the grandfather clauses in . . . § 38-72a was substantively and procedurally improper; and [the commissioner] improperly denied [the plaintiffs'] claim of estoppel." Relying on its interpretation of § 38-72a (b) and (c), the trial court reversed the commissioner's decision and held that the grandfather clauses of the statute do not impose a requirement of "continuous licensure."

The principal claim raised by the commissioner on appeal is that the trial court erred in reversing his decision to rescind the plaintiffs' licenses to sell insurance. He argues that § 38-72a (b) and (c) are ambiguous because their grandfather clauses fail to provide for the situation at hand. According to the commissioner, the failure of the statute to mention the effect of the lapse or expiration of an insurance license creates an ambiguity. This ambiguity, the commissioner argues, compels the court to construe § 38-72a in light of its purpose and legislative history and apply a narrow interpretation to its grandfather clauses that requires continuous licensure. We disagree that the statute is ambiguous and refuse to adopt a construction that would create such a requirement.

It is our duty to "interpret statutes as they are written." *Muha* v. *United Oil Co.,* 180 Conn. 720, 730, 433 A.2d 1009 (1980). "Courts cannot, by construction, read into statutes provisions which are not clearly stated." *Robinson* v. *Guman,* 163 Conn. 439, 444, 311 A.2d 57 (1972); *Johnson* v. *Manson,* 196 Conn. 309, 314, 493 A.2d 846 (1985), cert. denied, 474 U.S. 1063, 106 S. Ct. 813, 88 L. Ed. 2d 787 (1986); *Houston* v. *Warden,* 169 Conn. 247, 251–52, 363 A.2d 121 (1975). "[T]he intent of the legislature is to be found not in what it meant to say but in what it did say." *Federal Aviation Administration* v. *Administrator,* 196 Conn. 546,

549–50, 494 A.2d 564 (1985); *State* v. *Smith,* 194 Conn. 213, 222, 479 A.2d 814 (1984); *Gomeau* v. *Forrest,* 176 Conn. 523, 526, 409 A.2d 1006 (1979); see also *Burnham* v. *Administrator,* 184 Conn. 317, 325, 439 A.2d 1008 (1981); *Colli* v. *Real Estate Commission,* 169 Conn. 445, 452, 364 A.2d 167 (1975). A statute "does not become ambiguous merely because the parties contend for different meanings." *Luttrell* v. *Luttrell,* 184 Conn. 307, 310–11, 439 A.2d 981 (1981); *Caldor, Inc.* v. *Heffernan,* 183 Conn. 566, 571, 440 A.2d 767 (1981); see also *State Medical Society* v. *Board of Examiners in Podiatry,* 208 Conn. 709, 721, 546 A.2d 830 (1988). Given an unambiguous statute, "it is assumed that the words themselves express the intent of the legislature . . . and there is no need to construe the statute." (Citations omitted.) *Federal Aviation Administration* v. *Administrator,* supra, 549–50; *State* v. *Smith,* supra, 221; *Bell* v. *Planning & Zoning Commission,* 173 Conn. 223, 226, 377 A.2d 299 (1977); *Houston* v. *Warden,* supra, 251; *Hartford Hospital* v. *Hartford,* 160 Conn. 370, 375–76, 279 A.2d 561 (1971).

The commissioner conceded in both his brief and at oral argument that § 38-72a (b) and (c) "offers *no* guidance as to whether a lapse in licensing would operate to subsequently divest one of a previously conferred exemption from the bank affiliation licensure disqualification." (Emphasis added.) Instead, he cites both *Board of Trustees* v. *Commissioner,* 1 Conn. App. 22, 25, 467 A.2d 925 (1983), and *Board of Trustees* v. *Freedom of Information Commission,* 181 Conn. 544, 550, 436 A.2d 266 (1980), for the proposition that where the words of a statute fail to provide for a particular situation, it is necessary to look beyond the literal wording of the statute. In both *Board of Trustees* v. *Commissioner* and *Board of Trustees* v. *Freedom of Information Commission,* however, we were seeking to interpret a statute by defining words in the statute. The instant case

involves a very different scenario; the grandfather clauses in § 38-72a (b) and (c) say absolutely nothing about the consequences to an exempt organization if it allows its insurance licenses to lapse. Absent such language by the legislature, this court cannot "engraft amendments onto the statutory language." *Burnham* v. *Administrator,* supra, 325; *State Medical Society* v. *Board of Examiners in Podiatry,* supra, 727. If the legislature had desired a continuous licensure requirement under § 38-72a (b) and (c) it could have inserted it into the statute. It is not the prerogative of the insurance commissioner or the court to do so. As we have stated in numerous other cases, "it is not the province of a court to supply what the legislature chose to omit. The legislature is supreme in the area of legislation, and courts must apply statutory enactments according to their plain terms." *Federal Aviation Administration* v. *Administrator,* supra; *In re Petition of State's Attorney, Cook County, Illinois,* 179 Conn. 102, 107, 425 A.2d 588 (1979); *Weingarten* v. *Allstate Ins. Co.,* 169 Conn. 502, 507–508, 363 A.2d 1055 (1975).

The commissioner insists, however, that the silence of the statute concerning the effects of the lapse of licensure on a grandfathered organization makes the statute at least latently ambiguous. To support his claim, the commissioner maintains that cases from other jurisdictions interpreting similar grandfather clauses, which do not have explicit language requiring continuous licensure, are narrowly interpreted to deny grandfather status in instances where a license has lapsed after having been grandfathered. See *Rich* v. *Board of Optometry,* 242 Cal. App. 2d 598, 51 Cal. Rptr. 674 (1966); *People ex rel. Bagley* v. *Hamilton,* 25 App. Div. 428, 49 N.Y.S. 605 (1898); *Matter of Lewis,* 26 Misc. 532, 57 N.Y.S. 676 (1899).[4] Since the legislature

---

[4] While the courts in the cases cited by the commissioner do give a narrow interpretation to the grandfather clauses involved in those cases, it

is presumed to know the existing state of the law when it enacts a statute; see *State* v. *Dabkowski,* 199 Conn. 193, 201, 506 A.2d 118 (1986); the commissioner asserts that the legislature must have intended that § 38-72a (b) and (c) be narrowly interpreted to defeat the exemptions in this case.

If we accept the commissioner's argument that § 38-72a (b) and (c) do contain a latent ambiguity, we must review the legislative history of those subsections. See *Rhodes* v. *Hartford,* 201 Conn. 89, 93, 513 A.2d 124 (1986); *DeFonce Construction Corporation* v. *State,* 198 Conn. 185, 187, 501 A.2d 745 (1985); *Peck* v. *Jacquemin,* 196 Conn. 53, 64, 491 A.2d 1043 (1985); *Dukes* v. *Durante,* 192 Conn. 207, 214, 471 A.2d 1368 (1984); *Robinson* v. *Unemployment Security Board of Review,* 181 Conn. 1, 8, 434 A.2d 293 (1980). Such a review, however, reveals more support for the plaintiffs' position than for that of the commissioner's.

While the obvious overall intent of the legislature in enacting § 38-72a was to separate lending institutions from the insurance business; see Conn. Joint Stand-

should be noted that all of those cases were decided on a finding of abandonment. The commissioner conceded at oral argument that he had made no finding of abandonment. See footnote 2, supra. Moreover, grandfather clauses are not always given a narrow interpretation. See *National Assn. of Casualty & Surety Agents* v. *Board of Governors of the Federal Reserve System,* 856 F.2d 282 (D.C. Cir. 1988); *State ex rel. Krausmann* v. *Streeter,* 226 Minn. 458, 33 N.W.2d 56 (1948); *Matter of Tucker* v. *Board of Pharmacy,* 127 Misc. 538, 217 N.Y.S. 217 (1926). Rather, these clauses are interpreted based on well established rules of statutory interpretation. See annot., 4 A.L.R.2d 667, 670. Rules of interpretation require that, absent a clear statute, courts should review the intent of the legislature in creating such an exemption when it drafted the statute. The legislative history at issue in *Rich* v. *Board of Optometry,* 242 Cal. App. 2d 598, 51 Cal. Rptr. 674 (1966), *People ex rel. Bagley* v. *Hamilton,* 25 App. Div. 428, 49 N.Y.S. 605 (1898), and *Matter of Lewis,* 26 Misc. 532, 57 N.Y.S. 676 (1899), indicated that the legislature did not intend the parties in those cases to be protected by the grandfather clauses in question. As will be pointed out infra, this is not so in the case at hand.

ing Committee Hearings, Insurance and Real Estate, 1973 Sess., pp. 181–85; the legislative history specifically discussing the grandfather clause in § 38-72a (b) indicates that a continuous licensing requirement was considered by the drafters, inserted in the original bill, and was subsequently deleted from the statute.[5] As originally drafted, the grandfather clause in the proposed bill read as follows: "provided any such person or organization which was lawfully licensed to sell fire and casualty insurance on January 1, 1973, may continue to hold such licenses until its cancellation, termination or expiration." Conn. Substitute Senate Bill No. 2124, 1973 Sess. This language was subsequently amended to read: "provided this subsection shall not apply to any such person or organization which was lawfully licensed to sell fire and casualty insurance on October 1, 1973." General Statutes § 38-72a (b).[6] The deletion by the legislature of language expressly covering terminated or expired licenses persuades us that it was not its intent to require grandfathered institutions to be continuously licensed in order to remain exempt under the statute.[7] "The *rejection* by the Legis-

---

[5] The legislative history of General Statutes § 38-72a (c) does not disclose any specific discussion of its grandfather clause. That section, however, was enacted for the same purposes as § 38-72a (b) and essentially mimics its language. Therefore, legislative intent that can be gleaned from § 38-72a (b) is applicable to subsection (c).

[6] The commissioner argues that this amendment was technical in nature and meant only to clarify the statute. To support this argument, he cites the comments of Representative William A. Bevacqua. 16 H.R. Proc., Pt. 8, 1973 Sess., p. 3929. While it is true that Representative Bevacqua's comments on the floor do discuss certain technical amendments, it appears that these comments were directed at amendments to language in other parts of the legislation.

[7] The commissioner urges us to read General Statutes § 38-72a as a whole to avoid an irrational and unworkable result. In support of this argument, he states that a reading of the statute allowing for noncontinuous licensure would make subsections (b) and (c) of § 38-72a irreconcilable. According to the commissioner, since subsection (b) prohibits the licensing of an officer or employee unless the officer or employee is grandfathered, and

lature of a specific provision contained in an act as originally introduced is most persuasive to the conclusion that the act should not be construed to include the omitted provision." (Emphasis added.) *Rich* v. *Board of Optometry,* 235 Cal. App. 2d 591, 607, 45 Cal. Rptr. 512 (1965); *Board of Barber Examiners* v. *Walker,* 67 Ariz. 156, 164, 192 P.2d 723 (1948); *Gilbertson* v. *McLean,* 216 Or. 629, 642, 341 P.2d 139 (1959); see *Pennsylvania R.R. Co.* v. *International Coal Mining Co.,* 230 U.S. 184, 198–99, 33 S. Ct. 893, 57 L. Ed. 1446 (1913); see also *Turpin* v. *Mailet,* 579 F.2d 152 (2d Cir. 1978) (in interpreting enacted provisions, it is appropriate to review their legislative history including provisions earlier rejected).

Accordingly, we hold that the trial court did not err by refusing to engraft a continuous licensing requirement onto the unambiguous language of § 38-72a (b) and (c). Even if the language of the statute were latently ambiguous, its legislative history indicates that the legislature specifically rejected the policy of requiring an exempt organization to be continuously licensed in order to remain grandfathered. It is unnecessary to review the additional claims asserted by the plaintiffs.

There is no error.

In this opinion the other justices concurred.

---

subsection (c) does not mention officers or employees, thus permitting licensing, organizations could, under the plaintiffs' reading of the statute, continue their insurance operations ad infinitum under subsection (c) but be limited to the lifespan of the licensed officer or employee under subsection (b). This argument is unpersuasive. Common sense dictates that officers or employees of an exempt organization should be allowed to be licensed.