[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an appeal from a decision of the defendant Town of Windsor Locks Planning and Zoning Commission ("the Commission") granting the defendants Joseph and Johanna Albani's application for a special permit to develop three rear lots as part of an application for a five lot subdivision of the Albani property. CT Page 7968
The dispositive issue in this appeal is whether Chapter XIV of the Zoning Regulations, Town of Windsor Locks, ("regulations") permits the issuance of a special permit for rear lot development for more than two adjacent or contiguous lots. The owners obtained a special permit to develop three adjacent rear lots. In their appeal the plaintiffs argue that the applicable regulations prohibit the Commission from granting a special permit for the development of more than two rear lots.
The following undisputed facts give rise to this appeal.[1]
The defendants Joseph and Johanna Albani are owners of property known as 53 South Center Street, Windsor Locks, Connecticut. In October, 1994, the Albanis and the defendant Kervick submitted an application for a special use permit for three rear lots as part of an application for a five lot subdivision for the Albani property. Both applications were approved, after a public hearing, thereby permitting the defendants to subdivide the property into five lots, three of which are rear lots.
The special use permit for the three rear lots was granted pursuant to Chapter XIV of the regulations. Chapter XIV sets forth the requirements and standards with respect to rear lots. § 1401 authorizes the Commission to "grant special permits to allow the construction of dwellings with permitted accessory buildings on rear lots in residential zones." § 1403 specifies that "[n]o special permit or permits shall be granted authorizing construction on rear lots unless the applicants for such permits demonstrate compliance" with the seven conditions set forth in that section. In particular, sub-paragraph B states that:
 There shall be a maximum of one single-family dwelling with permitted accessory buildings on the rear lot. The Commission may grant special permits approving the construction of single-family dwellings on a maximum of two adjacent or contiguous rear lots, however, each of which meets all the requirements of this section except that said lots may share a common right-of-way and driveway (emphasis supplied).
The plaintiff contends that the language in paragraph B authorizing the commission to approve "the construction of single-family dwellings on a maximum of two adjacent or CT Page 7969 contiguous rear lots" acts as an absolute prohibition on the commission authorizing construction on more than two abutting rear lots.
The defendants argue that the number of rear lots subject to construction is a function of either the number of primary lots or the number of access roads serving the rear lots. Thus, under the Town of Windsor's interpretation, houses may be constructed on two rear lots for each primary lot. For example, since the subdivision in this application has two primary lots, the commission could lawfully grant special permits for a maximum of four rear lot dwellings. Similarly, if there were three primary lots, then six rear lots on contiguous property could be developed.
The defendant Kervick offers a similar interpretation, focusing on the number of access roads to the rear lot. He argues that a special permit may be granted to develop two rear abutting or contiguous lots for every access road to those lots. Under his interpretation there is no limitation on the number of rear lots subject to special permit approval as long as there is an access road for every two abutting lots.
Resolution of the parties' dispute is dependent on the construction given to the operative language in § 1403, paragraph B. When construing an ordinance or regulation, a court is to apply the same rules of construction utilized in interpreting statutes. Hall Manor Owner's Association v. City of West Haven,212 Conn. 141 (1989). "In construing a statute, we seek to ascertain and give effect to the apparent intent of the legislature." Villaincourt v. New Britain Machine, 224 Conn. 382,390 (1993). "In seeking to discern that intent we look to the words of the statute itself, to the legislative history and circumstances surrounding the enactment, to the legislative policy it was designed to implement add to its relationship to existing legislation." State v. McVeigh, 224 Conn. 593, 607
(1993).
We start with the language employed by the legislature. Generally, "when the language of a statute is plain and unambiguous, we need look do further than the words themselves because we assume that the language expresses the legislature's intent." West Hartford Interfaith v. Town Council, 228 Conn. 498,507 (1994). The statute must be interpreted according to its plain and ordinary meaning. "The intent of the legislature is to be found not in what it meant to say, but in what it did say." CT Page 7970Glastonbury Co. v. Gillies, 209 Conn. 175, 179 (1988). "When the language of a statute is unclear, however, we may ascertain the intent of the legislature by looking beyond the language to the statute's legislative history and the purpose that the statute was intended to serve. A statute should not be interpreted to thwart its purpose." West Hartford Interfaith v. Town Council,
supra.
All parties agree that Chapter XIV, as drafted, is not a model of clarity. Paragraph B of § 1403 begins by declaring that "[t]here shall be a maximum of one single-family dwelling . . . on the rear lot." The plain meaning of this provision is clear. No more than one dwelling may be constructed on a rear lot. The next sentence of paragraph B then provides that the "Commission may grant special permits approving the construction of single-family dwellings on a maximum of two adjacent or contiguous lots" provided that each lot "meets all the requirements of this section except that each lot may share a common right of way or driveway."
The ambiguity in paragraph B arises out of the fact that while paragraph B explicitly limits rear lot construction to no more than two contiguous or adjacent lots, it does not address the question raised in this case: is the Commission prohibited from granting a special permit for the development of more than two adjacent rear lots if the number of rear lots arises out of more than one primary or front lot?
It is appropriate to note that the concept of a rear lot only has meaning if reference is made to the primary lot to which the rear lot is attached. A rear lot does not exist in isolation. It arises out of its connection to a front lot or primary lot. Thus in construing the phrase, "maximum of two adjacent or contiguous rear lots" consideration must be given to the relationship between a rear lot and the primary lot from which it derives.
This interpretation is consistent with the language and apparent purpose of Chapter XIV. Paragraph B, as previously noted, limits rear lot construction to a "maximum of two adjacent or contiguous lots." The plain meaning of the word maximum is "the greatest possible quantity" or "an upper limit stipulated by law." American Heritage Dictionary (2nd Ed.). The use of the word maximum, in this context, plainly limits the number of contiguous rear lots that may be the site of single family CT Page 7971 dwellings. What remains unclear is whether the "maximum" of two adjacent rear lots referred to in Paragraph B is an overall limitation on the number of rear lots that my be developed — which is the logic of plaintiff's position — or, instead, represents a limitation on the number of rear lots per each primary lot which are subject to development.
What is evident from the use of the word "maximum" is the Commission's concern about the potential overdevelopment of rear lots. This is consistent with the overall purpose of Chapter XIV, which is to limit in number and density the dwellings constructed on such rear lots. For example, the definition of lot set forth in Chapter I, "Definitions", provides that a lot a plot of land occupied or capable of being occupied by one (1) building." The first sentence of paragraph B of § 1403 reiterates that definition by affirming that "there shall be a single-family dwelling . . . on the rear lot." Paragraph G of § 1403 prohibits the issuance of a special permit for "any rear lot having a lot area of less than double the size of the particular zone," thus prohibiting the construction of a dwelling on any rear lot that is not at least twice the size required by the zone. These provisions reflect an intent to permit rear lot development conditioned on strict limitations on the number of dwellings permitted on a rear lot.
Whether the underlying purpose of the rear lot limitation is aesthetic or based on health and safety concerns, it is apparent that the principal purpose of Chapter XIV is to restrict the use of rear lots. Such a restriction, however, only makes sense if the limitation on rear lot development is a function of the number of primary lots in issue. That is best illustrated by assuming that the two front lots in this case were not owned by the same developer. If the owner of the first lot were granted a special permit to develop two adjacent rear lots, under plaintiff's interpretation the owner of the other front lot would be denied a special permit to develop two adjacent rear lots because a special permit had already been issued for a "maximum of two adjacent rear lots." Yet such an interpretation would deprive the owner of the second primary lot the opportunity to develop his rear lots based on the fortuity of the first owner having obtained earlier a special permit. "In construing a statute, the court must use common sense and assume that a reasonable and rational result was intended." Ford Motor CreditCo. v. B.W. Beardsley, Inc., 208 Conn. 13, 20 (1988). CT Page 7972
In order to avoid the peculiar result of holding that different owners of front lots could not both obtain special permits to construct dwellings on two adjacent rear lots arising out of each front lot, it is necessary to construe Paragraph B's limitation as applying to two contiguous or adjacent lots that arise out of one primary lot. This construction is consistent with the overall purpose of the Chapter XIV, which is to impose limitations on the development of rear lots; Nichols v. Warren,209 Conn. 191 (1988) (statute should be construed according to the policy that the legislature seeks to serve) and at the same time avoids bizarre results. King v. Board of Education,203 Conn. 324, 333 (1987) ("Statutes must be construed, if possible, that absurdity and mischief be avoided.")
The plaintiff also argues that the Commission improperly waived the frontage requirement of one of the two primary lots located on South Center Street. Under the zoning regulations, Zone A lots must have 120 feet of frontage. Defendant's lot 5 has 117 feet of frontage. The Commission waived the 120 feet requirement for lot 5. Pursuant to § 211 of the Regulations, such a waiver may be granted "solely for the purpose of accommodating design consideration or problems." The plaintiff contends that the Commission's waiver was not based on "design consideration or problems."
A review of the record, including the defendants' application and supporting documentation, indicates that the Commission's decision to grant the waiver is supported by substantial evidence of design considerations. In the absence of such a waiver, additional lots and roads might have been constructed off of Center Street. The Commission's decision granting the waiver is adequately supported by the record and is therefore affirmed. Spectrum of Connecticut v. Planning ZoningCommission of Town of Ellington, 13 Conn. App. 159 (1988).
For the foregoing reasons, the plaintiff's appeal is dismissed.