[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] Memorandum of Decision
When is a day care facility also a water company? This administrative appeal addresses this unusual issue.
BACKGROUND OF THE CASE
A hearing officer of the defendant Department of Public Health ("the department") found the following facts. The plaintiff, Michael Guarco, along with two other individuals, owns land and a building in Granby, where he operates the Granby Church Corners Day Care Center and Learning Center. (Return of Record ("ROR"), p. 4, ¶¶ 1, 6).[1] The only source of water for the property is a well that is owned and managed by the plaintiff. The well does not supply water to any other property. (ROR, p. 4, ¶ 5). The location of the well is less than seventy-five feet from an underground oil storage tank and less than twenty-five feet from the building's foundation. (ROR, p. 5, ¶ 10).
The building in which the day care center operates has four bathrooms and one kitchen. As of May, 2000, approximately fifty children attended the day care center, which was open five days a week from 7:00 a.m. to 5:30 p.m. More than twenty-five of those children attended for more than six months of the year on a regular basis. (ROR, pp. 4-5, ¶¶ 2, 3, 4, 6, 11). The children used the water supplied by the well to wash their hands. Prior to May 15, 2000, when the department issued orders to test the water, the children used the water to "mix drinks," but after May 15, 2000, the children were directed not to drink the water. (ROR, pp. 4-5, ¶¶ 7, 9).[2]
From October 1, 1999 to March 31, 2000, the plaintiff failed to perform tests on the water for bacteriological and physical parameters, organic chemicals, pesticides, herbicides, polychlorinated biphenyls (PCBs), lead, and copper, and to submit test results to the department. On May 15, 2000, the department ordered the plaintiff to perform these tests, to submit the results to the department by June 30, 2000, and to notify the public of his earlier failure to test. The department's order provided that civil penalties would ensue if the plaintiff failed to comply. CT Page 15198 (ROR, pp. 2, 5, ¶ 14). The plaintiff did not comply, but instead appealed the order to a hearing officer, claiming that the state's "water company" statutes and regulations did not apply to him. (ROR, p. 5, ¶ 14, p. 6).
The hearing officer conducted a hearing on August 10, 2000. On September 21, 2000, the hearing officer concluded that the plaintiff owns and operates a water company, and affirmed the order. (ROR, pp. 2-8). This appeal followed.
DISCUSSION
 I
Pursuant to General Statutes § 25-32 (a), the department has jurisdiction over:
 all matters concerning the purity and adequacy of any water supply source used by any municipality, public institution or water company for obtaining water, the safety of any distributing plant and system for public health purposes, the adequacy of methods used to assure water purity, and such other matters relating to the construction and operation of such distributing plant and system as may affect public health.
As it pertains to this case, a "water company" means:
 any individual, partnership, association, corporation, municipality or other entity, or the lessee thereof, who or which owns, maintains, operates, manages, controls, or employs any pond, lake, reservoir, well, stream or distributing plant or system that supplies water to two or more consumers or to twenty-five or more persons on a regular basis. . . .
General Statutes § 25-32a.
Pursuant to General Statutes § 25-32e, the Commissioner of Public Health has authority to impose civil penalties of up to five thousand dollars per day per violation if he determines that a water company has violated various statutes and department regulations. Among those regulations are requirements that water companies conduct various water quality tests on a defined schedule. See Regs., Conn. State Agencies § 19-13-B102 (c). CT Page 15199
The hearing officer held that the plaintiff owns a "water company" because his well "supplies water . . . to twenty-five or more persons on a regular basis. . .," rather than because the well "supplies water to two or more consumers. . . ." (ROR, pp. 6-7).[3] This holding is a mixed conclusion of fact and law. Under the Uniform Administrative Procedure Act ("UAPA"), General Statutes § 4-166 et seq., judicial review of this holding is very restricted. See MacDermid, Inc. v.Department of Environmental Protection, 257 Conn. 128, 136-37,___ A.2d ___ (2001). Section 4-183 (j) of the General Statutes provides as follows:
 The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court shall affirm the decision of the agency unless the court finds that substantial rights of the person appealing have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: (1) In violation of constitutional or statutory provisions; (2) in excess of the statutory authority of the agency; (3) made upon unlawful procedure; (4) affected by other error of law; (5) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
Stated differently, "[j]udicial review of an administrative agency decision requires a court to determine whether there is substantial evidence in the administrative record to support the agency's findings of basic fact and whether the conclusions drawn from those facts are reasonable." (Internal quotations omitted.) Schallenkamp v. DelPonte,229 Conn. 31, 40, 639 A.2d 1018 (1994).
 II
The factual component of the hearing officer's finding readily passes review. There was substantial evidence for the hearing officer to find as a factual matter that the plaintiff provides well water to twenty-five to fifty persons during the day for more than six months a year for the purpose, at a minimum, of washing their hands. (ROR, Volume II (Transcript of August 10, 2000 hearing), pp. 26-27, 31). Given this finding, it was certainly reasonable for the hearing officer to make the subsidiary conclusion that the plaintiff provides water to "twenty-five or more persons on a regular basis" within the meaning of General Statutes §25-32a. CT Page 15200
The remaining question is whether, as a matter of law, the plaintiffs well "supplies" water within the meaning of § 25-32a. This question is a matter of statutory construction. The statute does not define "supplies," however, and there is no binding case law. Although this court might ordinarily defer to the agency's interpretation of the statute, the agency is not entitled to special deference when, as here, the state agency's determination of a question of law has not previously been subject to judicial scrutiny. MacDermid, Inc. v. Department ofEnvironmental Protection, supra, 257 Conn. 136.
The plaintiff argues that "supplies" must mean "supplies for human consumption." The problem with this argument is that the statute does not say that. On the contrary, the statute does not specify the purpose for which the water must be supplied in order for the supplier to constitute a "water company." Although it might have made sense for the legislature to limit the definition of "water company" in the way proposed by the plaintiff, courts are not free to rewrite statutes. The court is bound by what the legislature did say, not what it meant to say. See GlastonburyCo. v. Gillies, 209 Conn. 175, 179, 550 A.2d 8 (1988).
Connecticut's statute stands in contrast to the federal Safe Drinking Water Act, which defines a "public water system" as one "for the provision to the public of piped water for human consumption if such system has at least 15 service connections or regularly serves at least 25 individuals." (Emphasis added.) 42 U.S.C. § 300f (4). The differences between the state and federal acts are especially significant given the fact that the General Assembly enacted the current definition of "water company" with the federal act in mind.[4] Thus, the state legislature could easily have adopted the federal act's language limiting the relevant use of water to "human consumption," but did not do so.
Of course, in order for the statute and the accompanying system of water testing to be meaningful, a water company must supply water for some type of use or potential use. In the present case, the hearing officer found that, throughout the time period in question, the children at the day center used water for washing their hands. Although this activity may not be the primary reason for the department to have regulations requiring water testing, it is not for the court to say that government oversight is unimportant here. The department could reasonably believe that children should wash their hands only with water meeting high public health standards or that it is impractical to monitor the use of running water so as to require testing only when human consumption happens to occur. The court presumes that the department will use its resources wisely so as not to burden the average citizen with unnecessary government regulation. In this case, the fact that the plaintiff provides CT Page 15201 water to the requisite number of people for the purpose of washing their hands is sufficient to establish that the plaintiff "supplies water" under § 25-32a and to conclude that the plaintiff is a "water company."[5]
 III
The plaintiffs alternative argument is that, because he tests his water every two years in conformance with the requirements of his day care license, the more stringent water company statutes and regulations do not apply to him. This argument does not withstand scrutiny.[6] The state's regulations governing day care centers specifically require that the owner maintain the water supply in compliance with the Public Health Code, see Regs., Conn. State Agencies § 19a-79-7a (c)(3), which in turn includes the water testing regulation being enforced here. See Public Health Code (2000), pp. 123, 128-29. Further, there is no conflict between the two statutory schemes. It is certainly possible to comply with both the day care testing requirements and the water company testing requirements. Because there is no conflict between the statutes, the rule, invoked by the plaintiff, that specific provisions should prevail over more general ones does not apply. Cf. Gifford v. Freedom ofInformation Commission, 227 Conn. 641, 652-53, 631 A.2d 252 (1993). Rather than read the statutes to create a genuine conflict, the court should seek to harmonize legislation. See Dodd v. Middlesex MutualAssurance Co., 242 Conn. 375, 388, 698 A.2d 859 (1997). That harmony is achieved by holding that when, as here, a day care facility is also a water company, it must comply not only with the water standards for day care facilities, but also with the higher water standards applicable to water companies.
CONCLUSION
The plaintiff having failed to sustain the grounds for his appeal, the appeal is dismissed.
Carl J. Schuman Judge, Superior Court