CONNECTICUT STATE MEDICAL SOCIETY ET AL. *v.*
CONNECTICUT BOARD OF EXAMINERS IN
PODIATRY ET AL.
(13334)
(13335)

PETERS, C. J., CALLAHAN, GLASS, COVELLO and HULL, Js.

Argued June 9—decision released August 23, 1988

*William J. McCullough,* assistant attorney general, with whom, on the brief, were *Joseph I. Lieberman,* attorney general, and *Robert E. Walsh* and *Richard J. Lynch,* assistant attorneys general, for the appellant (named defendant).

*William H. Narwold,* with whom were *Eric Watt Weichmann* and, on the brief, *Karen L. Goldthwaite,* for the appellants (defendant Steven Perlmutter et al.).

*Linda L. Randall,* with whom were *Jeanette C. Schreiber* and *Andrew W. Roraback,* for the appellees (plaintiffs).

HULL, J. The dispositive issue in this appeal is whether the trial court erred in sustaining the appeal of the plaintiffs, the Connecticut State Medical Society and Enzo Sella, M.D., from a declaratory ruling of the defendant Connecticut Board of Examiners in Podiatry (board). In proceedings to determine whether the scope of podiatry practice, as defined in General Statutes § 20-50,[1] includes treatment of the ankle in certain respects,[2] the board had declared that "the ankle is part of the foot and the foot is part of the ankle." We conclude that the court applied the correct standard of review of the board's ruling in determining that as a matter of law the board had erroneously construed the applicable statute. Accordingly, we find no error.

[1] "[General Statutes] Sec. 20-50. PODIATRY DEFINED. REQUIREMENTS FOR SURGERY. Podiatry is defined to be the diagnosis, prevention and treatment of foot ailments including the prescription, administering and dispensing of drugs and controlled substances in schedules II, III, IV or V, in accordance with subsection (d) of section 21a-252, in connection therewith; the practice of surgery upon the feet, provided if an anesthetic other than a local anesthetic is required, such surgery shall be performed in a general hospital accredited by the Joint Commission on Accreditation of Hospitals by a licensed podiatrist who is accredited by the credentials committee of the medical staff of said hospital to perform podiatric surgery in conformance with rules promulgated by the chief of the surgical department of said hospital, taking into account the training, experience, demonstrated competence and judgment of each such licensed podiatrist, and such podiatrist shall comply with such rules; the dressing, padding and strapping of the feet; the making of models of the feet and the palliative and mechanical treatment of functional and structural ailments of the feet, not including the amputation of the leg, foot or toes or the treatment of systemic diseases other than local manifestations in the foot."

[2] The memorandum of decision of the board is as follows: "It is the ruling of the Board of Examiners in Podiatry, after reviewing all the testimony, exhibits and supporting statements offered in connection with the hearing held 7 November 1984, that the ankle is part of the foot, and the foot is part of the ankle. The Board further rules that sprains, strains, and positional abnormalities of the ankle constitute ailments of the foot, and that diagnosis and treatment of sprains, strains, and positional abnormalities of the ankle are therefore within the scope of podiatry practice in Connecticut."

This case has its genesis in the following ruling by a Medicare intermediary in January, 1984: "Podiatrists meet the Medicare definition of physician to the extent that state law permits their practice. In Connecticut that practice is limited to the diagnosis, prevention and treatment of foot ailments; therefore, services involving the ankle are not covered by Medicare." This ruling caused great concern to doctors of podiatric medicine. In a letter dated March 18, 1984, the board sought an opinion from the attorney general on the following question: "Is the diagnosis and treatment of sprains, strains and positional abnormalities of the ankle . . . within the scope of podiatry practice in Connecticut?" In its request, the board noted that "[p]odiatrists in Connecticut have conservatively treated minor sprains, strains and fractures of the foot and ankle for many years without any regulatory or reimbursement questions being raised."

The attorney general responded by letter dated May 30, 1984, and stated that the "question posed in the request for advice is one which calls for a factual determination. In order to respond, analysis must first be conducted of the human anatomy to ascertain whether the ankle is, in fact, part of the foot, or vice-versa. Once accomplished, the analysis would have to continue with the determination of whether a sprain or strain of the ankle is, in fact, an 'ailment of the foot.' Conn. Gen. Stat. § 20-50." 62 Op. Conn. Atty. Gen. 229, 231 (1984). The attorney general concluded that "[these] factual issues identified above are best addressed by the Board of Examiners in Podiatry directly." Id. The attorney general's opinion then set forth three mechanisms that the board could utilize to resolve these factual issues: (1) a declaratory ruling pursuant to General Statutes § 4-176; (2) regulations pursuant to General Statutes § 19a-14 (a) (4); or (3) adjudication of a disciplinary complaint concerning a podiatrist claimed to

be acting beyond the scope of his licensure, pursuant to General Statutes § 20-59. Id.

After issuance of the attorney general's opinion, three doctors of podiatric medicine, the defendants Steven Perlmutter, Kove J. Schwartz and Harvey D. Lederman, wrote separately to the board requesting clarification of the opinion. In September, 1984, the board issued a notice of hearing, pursuant to § 4-176,[3] stating that a hearing would be held "for the purpose of issuing a declaratory ruling as requested on the issue of: Whether the diagnosis and treatment of sprains, strains and positional abnormalities of the ankle [are] within the scope of podiatry practice in Connecticut." The commissioner of health services and the three named doctors of podiatric medicine were designated as parties to the proceedings.

The board conducted the hearing on November 7, 1984, and received fifteen exhibits and heard testimony from eleven witnesses, both podiatrists and medical doctors, concerning the anatomical relationship between the foot and the ankle.[4] It subsequently issued a declaratory ruling that the ankle is part of the foot and that podiatrists could, therefore, treat ankle ailments. The

[3] "[General Statutes] Sec. 4-176. DECLARATORY RULINGS. Each agency may, in its discretion, issue declaratory rulings as to the applicability of any statutory provision or of any regulation or order of the agency, and each agency shall provide by regulation for the filing and prompt disposition of petitions seeking such rulings. If the agency issues an adverse ruling, the remedy for an aggrieved person shall be an action for declaratory judgment under section 4-175 unless the agency conducted a hearing pursuant to sections 4-177 and 4-178 for the purpose of finding facts as a basis for such ruling, in which case the remedy for an aggrieved person shall be an appeal pursuant to section 4-183. If the agency fails to exercise its discretion to issue such a ruling, such failure shall be deemed a sufficient request by the plaintiff for the purposes of section 4-175. Rulings disposing of petitions have the same status as agency decisions or orders in contested cases."

[4] The plaintiff Enzo Sella, M.D., was granted intervenor status and testified at the hearing.

plaintiffs appealed from the board's ruling, pursuant to General Statutes § 4-183 (a).[5] The defendants moved to dismiss the appeals on the ground that the plaintiffs failed to allege sufficient facts from which aggrievement could be found. The trial court granted the motion to dismiss. On the plaintiffs' appeal from the judgment of dismissal, we reversed and remanded, holding that the allegations of the plaintiffs' complaint satisfied the pleading requirements for aggrievement. *State Medical Society* v. *Board of Examiners in Podiatry,* 203 Conn. 295, 303–304, 524 A.2d 636 (1987).

On remand, the trial court found that the plaintiffs were aggrieved and sustained their administrative appeal. The court characterized the issue as whether the board's actions represented a valid interpretation of the statute or an impermissible attempt to expand the scope of podiatry practice. It acknowledged that the board, as an agency within the meaning of General Statutes § 4-166 (1), may properly issue declaratory rulings, pursuant to § 4-176, predicated on its interpretation of statutes made for its guidance and which it is charged with administering. It noted, however, that such an agency must act strictly within its statutory authority and cannot modify, abridge or otherwise change the statutory provisions under which it acquires authority. The court stated that its review was not limited to a determination of whether the board's declaratory ruling interpreting a statute was clearly

---

[5] General Statutes § 4-176 authorizes an appeal, pursuant to General Statutes § 4-183, from a declaratory ruling where, as here, the agency conducted a hearing. Section § 4-183 (a) provides: "A person who has exhausted all administrative remedies available within the agency and who is aggrieved by a final decision in a contested case is entitled to judicial review by way of appeal under this chapter, provided, in case of conflict between this chapter and federal statutes or regulations relating to limitations of periods of time, procedures for filing appeals or jurisdiction or venue of any court or tribunal, such federal provisions shall prevail. A preliminary, procedural or intermediate agency action or ruling is immediately reviewable if review of the final agency decision would not provide an adequate remedy."

erroneous in view of the reliable, probative and substantial evidence on the whole record, but that while the court should not substitute its judgment for that of the agency on factual issues, it may disturb the agency's ruling if it is in violation of statutory provisions or affected by other error of law. The court concluded that, since General Statutes § 20-50 has not previously been subjected to judicial scrutiny, its construction was a question of law on which an administrative ruling is not entitled to special deference and that the court may review the ruling to determine whether it was correct as a matter of law.

The court then considered § 20-50, noting that it concerned "foot ailments" and, in four separate areas, referred to "feet." It reasoned that words and phrases are to be construed according to the commonly approved usage of the language. It further concluded that where language is clear and unambiguous, there is no room for construction, and that a statute does not become ambiguous merely because the parties argue for or would prefer different meanings. The court finally concluded that the statute clearly and specifically limits the practice of podiatry to diagnosis of foot ailments and surgery on the feet. In doing so it relied on common understanding and the definition of "foot" contained in Webster's Third New International Dictionary. The court decided that "foot" has a well accepted and common meaning that does not include the ankle, and therefore, the board's ruling clearly expanded the ambit of podiatry practice as defined in § 20-50 because it is contrary to the plain meaning of the statutes.

The board and the podiatrists filed separate appeals to the Appellate Court. Pursuant to Practice Book § 4023, we transferred these appeals to this court.

On appeal, the podiatrists claim that: (1) the trial court erred in reviewing the board's declaratory ruling

under a de novo standard of review, rather than under the statutory review criteria contained in § 4-183 (g); and (2) the board correctly concluded, on the basis of the facts found at the evidentiary hearing held on November 7, 1984, that the diagnosis and treatment of sprains, strains and positional abnormalities of the ankle are within the scope of podiatry practice in Connecticut.

The board assigns as error: (1) the trial court's ruling that the proper interpretation of the term "foot" as used in § 20-50 is purely a question of law rather than a mixed question of law and fact; (2) the trial court's conclusion that the board's declaratory ruling served to expand the ambit of podiatry practice as set forth in § 20-50; and (3) the trial court's ruling that the term "foot" as used in § 20-50 is to be accorded its commonly understood meaning as reflected in Webster's Dictionary.

For clarification, we construe these various claims of error as two issues: (1) whether the trial court applied the appropriate standard of review to the board's rulings; and (2) whether the trial court correctly interpreted § 20-50.

STANDARD OF REVIEW

The podiatrists argue that the trial court conducted a de novo review of the board's declaratory ruling and disregarded entirely the opinion of the attorney general and the board's factual findings and conclusions of law. They claim that the court substituted its judgment for that of the agency as to the weight of the evidence on questions of fact in violation of General Statutes § 4-183 (g). They further claim that the court erred in failing to afford "special deference" to the board's factual findings, and to time-tested agency interpretations.

The standard of judicial review of administrative agency rulings is well established. Section 4-183 (g) permits modification or reversal of an agency's decision "if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: (1) In violation of constitutional or statutory provisions; (2) in excess of the statutory authority of the agency; (3) made upon unlawful procedure; (4) affected by other error of law; (5) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion." The trial court may not retry the case or substitute its judgment for that of the agency on the weight of the evidence or questions of fact. General Statutes § 4-183 (g); *Griffin Hospital* v. *Commission on Hospitals & Health Care,* 200 Conn. 489, 496, 512 A.2d 199, appeal dismissed, 479 U.S. 1023, 107 S. Ct. 781, 93 L. Ed. 2d 819 (1986); *Hospital of St. Raphael* v. *Commission on Hospitals & Health Care,* 182 Conn. 314, 318, 438 A.2d 103 (1980); *Madow* v. *Muzio,* 176 Conn. 374, 376, 407 A.2d 997 (1978). Rather, an agency's factual and discretionary determinations are to be accorded considerable weight by the courts. *Connecticut Hospital Assn., Inc.* v. *Commission on Hospitals & Health Care,* 200 Conn. 133, 140, 509 A.2d 1050 (1986); *Board of Aldermen* v. *Bridgeport Community Antennae Television Co.,* 168 Conn. 294, 298–99, 362 A.2d 529 (1975); *Westport* v. *Norwalk,* 167 Conn. 151, 355 A.2d 25 (1974).

On the other hand, it is the function of the courts to expound and apply governing principles of law. *N.L.R.B.* v. *Brown,* 380 U.S. 278, 291, 85 S. Ct. 980, 13 L. Ed. 2d 839 (1965); *International Brotherhood of Electrical Workers* v. *N.L.R.B.,* 487 F.2d 1143, 1170–71 (D.C. Cir. 1973), aff'd sub nom. *Florida Power & Light Co.* v. *International Brotherhood of Electrical Workers,* 417

U.S. 790, 94 S. Ct. 2737, 41 L. Ed. 2d 477 (1974); *Connecticut Hospital Assn., Inc.* v. *Commission on Hospitals & Health Care,* supra; *Real Estate Listing Service, Inc.* v. *Real Estate Commission,* 179 Conn. 128, 138–39, 425 A.2d 581 (1979). This case presents a question of law turning upon the interpretation of a statute. See *Brannigan* v. *Administrator,* 139 Conn. 572, 577, 95 A.2d 798 (1953); *Bridgeport* v. *United Illuminating Co.,* 131 Conn. 368, 371, 40 A.2d 272 (1944). Both the board and the trial court had to construe § 20-50 to determine the permissible scope of podiatry practice in Connecticut. In our view, this is purely a question of law, requiring that the intent of the legislature be discerned. Such a question invokes a broader standard of review than is ordinarily involved in deciding whether, in light of the evidence, the agency has acted unreasonably, arbitrarily, illegally or in abuse of its discretion. *Robinson* v. *Unemployment Security Board of Review,* 181 Conn. 1, 5, 434 A.2d 293 (1980).

Ordinarily, we give great deference to the construction given a statute by the the agency charged with its enforcement. *Griffin Hospital* v. *Commission on Hospitals & Health Care,* supra, 496–97; *Corey* v. *Avco-Lycoming Division,* 163 Conn. 309, 326, 307 A.2d 155 (1972) (*Loiselle, J.,* concurring), cert. denied, 409 U.S. 1116, 93 S. Ct. 903, 34 L. Ed. 2d 699 (1973). We agree with the trial court, however, that, in this case, the board's interpretation of § 20-50 is not entitled to any special deference. "Ordinarily, the construction and interpretation of a statute is a question of law for the courts where the administrative decision is not entitled to special deference, particularly where, as here, the statute has not previously been subjected to judicial scrutiny or time-tested agency interpretations. *Texaco Refining & Marketing Co.* v. *Commissioner,* 202 Conn. 583, 599, 522 A.2d 771 (1987); *Schlumberger Technology Corporation* v. *Dubno,* 202 Conn. 412, 423, 521

A.2d 569 (1987); see also *Board of Education* v. *Board of Labor Relations,* 201 Conn. 685, 698–99, 519 A.2d 41 (1986); *Wilson* v. *Freedom of Information Commission,* 181 Conn. 324, 342–43, 435 A.2d 353 (1980)." *New Haven* v. *Freedom of Information Commission,* 205 Conn. 767, 773–74, 535 A.2d 1297 (1988).

Neither the board nor the courts have previously ruled on the issue presented here. Accordingly, such deference is not due the board's construction of § 20-50.

The podiatrists also argue the related principle of deference to a time-tested agency interpretation of a statute. They claim that "a practical construction placed on legislation over many years" will be accorded special deference by a reviewing court, citing *Schieffelin & Co.* v. *Department of Liquor Control,* 194 Conn. 165, 174, 479 A.2d 1191 (1984). We have accorded deference to such a time-tested agency interpretation of a statute, but only when the agency has consistently followed its construction over a long period of time, the statutory language is ambiguous, and the agency's interpretation is reasonable. *Texaco Refining & Marketing Co.* v. *Commissioner,* supra; *Sutton* v. *Lopes,* 201 Conn. 115, 120, 513 A.2d 139, cert. denied sub nom. *McCarthy* v. *Lopes,* 479 U.S. 964, 107 S. Ct. 466, 93 L. Ed. 2d 410 (1986); *Schieffelin & Co.* v. *Department of Liquor Control,* supra; *Clark* v. *Town Council,* 145 Conn. 476, 485, 144 A.2d 327 (1958); *Wilson* v. *West Haven,* 142 Conn. 646, 657, 116 A.2d 420 (1955). The defendants rely on the fact that podiatrists have long performed the procedures in question in this case. We disagree that such practices constitute time-tested agency interpretation of the statute. Further, we do not consider the board's knowledge of and acquiescence in certain podiatric practices to rise to the level of statutory construction entitled to judicial deference.

We also disagree that the court failed to give proper deference to the opinion of the attorney general. "Although an opinion of the attorney general is not binding on a court, it is entitled to careful consideration and is generally regarded as highly persuasive." *Connecticut Hospital Assn., Inc.* v. *Commission on Hospitals & Health Care,* supra, 143. We note that the opinion of the attorney general, although so labeled and published in 62 Op. Conn. Atty. Gen. 229, 231 (1984), is an opinion in name only. It contains no legal analysis of a contested issue for the guidance of those interested. Rather, the "opinion" merely referred the matter to the board for a "factual determination" and contained no legal analysis of the type to which our court has earlier granted deference. See *Connecticut Hospital Assn., Inc.* v. *Commission on Hospitals & Health Care,* supra.

The board's contention that the issue presented was a mixed question of law and fact is also without merit. Interpretation of the statute should effect the intent of the legislature and not expand the law's meaning to accommodate unauthorized practices simply because they have been performed in the past.

Since we consider the issue in this case to be one of statutory interpretation to determine the legislature's intent with regard to the scope of podiatry practice, we conclude that the trial court applied the appropriate standard in reviewing the board's construction of § 20-50.

### Interpretation of the Term "Foot"

General Statutes § 20-50 defines podiatry as "the diagnosis, prevention and treatment of foot ailments . . . the practice of surgery upon the feet . . . the dressing, padding and strapping of the feet; the making of models of the feet and the palliative and mechanical treatment of functional and structural ailments of

the feet, not including the amputation of the leg, foot or toes or the treatment of systemic diseases other than local manifestations in the foot." Our principal objective in construing statutory language is to ascertain the apparent intent of the legislature. *Rawling* v. *New Haven,* 206 Conn. 100, 105, 537 A.2d 439 (1988). "In construing a statute, this court will consider its plain language, its legislative history, its purpose and the circumstances surrounding its enactment." *State* v. *Parmalee,* 197 Conn. 158, 161, 496 A.2d 186 (1985).

General Statutes § 1-1 (a) requires that "[i]n the construction of the statutes, words and phrases shall be construed according to the commonly approved usage of the language; and technical words and phrases, and such as have acquired a peculiar and appropriate meaning in the law, shall be construed and understood accordingly." If the statutory language is clear and unambiguous, there is no room for construction. *New Haven* v. *United Illuminating Co.,* 168 Conn. 478, 485, 362 A.2d 785 (1975). If there is no ambiguity in the language of the statute, it does not become ambiguous merely because the parties argue for or would prefer different meanings. *Caldor, Inc.* v. *Heffernan,* 183 Conn. 566, 570, 440 A.2d 767 (1981). When language used in a statute is clear and unambiguous, its meaning is not subject to modification or construction. *Cilley* v. *Lamphere,* 206 Conn. 6, 9–10, 535 A.2d 1305 (1988). When a statute does not define a term, it is appropriate to look to the common understanding expressed in the law and in dictionaries. *Doe* v. *Manson,* 183 Conn. 183, 186, 438 A.2d 859 (1981).

Webster's Third New International Dictionary defines "foot" as "[t]he terminal part of the vertebrate leg upon which an individual stands consisting in most bipeds (as man) and in many quadrupeds (as the cat) of all the structures (as heel, arches, and digits) below the ankle joint . . . ." The podiatrists argue, however,

that the board's ruling, rather than the dictionary definition, is consistent with the legislative intent underlying the podiatry statutes. We are not so persuaded.

In 1915, the legislature passed the first statute licensing chiropody. Public Acts 1915, c. 229. Prior to that time anyone could practice chiropody in Connecticut. *Connecticut Chiropody Society, Inc.* v. *Murray,* 146 Conn. 613, 616, 153 A.2d 412 (1959). The practice of chiropody was not defined, however, until the enactment of § 1188c of the 1935 Cumulative Supplement to the General Statutes. The statutory language adopted in 1935 equated chiropody and podiatry and delineated the areas of practice as follows: diagnosis of foot ailments and the practice of minor surgery on the feet, including all structures of the phalanges but limited to those structures of the foot superficial to the inner layer of the fascia of the foot;[6] dressing, padding and strapping of the feet; and making of plaster models of the feet and the palliative and mechanical treatment of functional disturbances of the feet as taught and practiced in the schools of chiropody recognized by the examining board. The reference to the teaching and practice in schools of chiropody was eliminated by § 1023e of the 1939 Supplement to the General Statutes. The podiatrists, relying on the testimony of the state health commissioner (commissioner) at a hearing before the Joint Standing Committee on Public Health and Safety, claim that this change was made to authorize the board to define the scope of podiatric practice in Connecticut. Conn. Joint Standing Committee Hearings, Public Health and Safety, 1937 Sess., p. 135. They argue that the fact that the commissioner

[6] Public Acts 1971, No. 859, deleted the reference in General Statutes § 20-50 to the "phalanges but limited to those structures of foot superficial to the inner layer of the fascia of the foot," and substituted "forefoot forward of the tarsal bones, but excluding operations on the bones of the tarsus." This latter language was excised by Public Acts 1976, No. 76-99. Since then, the statute has contained no language qualifying the term "foot."

was instrumental in fashioning the definition lends strong support to the board's ruling.

We are unconvinced that the assertions of the commissioner are entitled to the weight the podiatrists urge us to accord them. See *Hartford Electric Light Co.* v. *Water Resources Commission*, 162 Conn. 89, 291 A.2d 721 (1971). "While relevant to our inquiry, [excerpts from legislative proceedings] are by no means conclusive in determining legislative intent. . . . As to occurrences at legislative public hearings, these are not admissible as a means of interpreting a legislative act and may not be considered." Id., 98. Further, our examination of the statutory scheme as it now exists belies such a conclusion.

A centrifugal professional force tending to expand podiatry may be seen from the early legislative history of the podiatry statutes. For instance, Public Acts 1969, No. 578, amended the pertinent drug statute to allow podiatrists, for the first time, to administer drugs, and Public Acts 1976, No. 76-99, made a major change in the podiatry statutes by eliminating the word "minor" from the surgery on the feet authorized for podiatrists. Presently, the podiatry statutes, General Statutes §§ 20-50 through 20-65, both authorize the practice of podiatry and define its limits. The provisions limiting the scope of podiatry and, thus, tempering the expansion, however, are the predominant theme of the statutes. This is in marked contrast to chapter 370 of the General Statutes, entitled "Medicine and Surgery," wherein the scope of practice of medicine and surgery is not defined, and chapter 371 concerning osteopathy where no such specific definitions limiting the scope of practice are contained. To the contrary, specific limitations on the practice of podiatry are contained in § 20-50. That the thrust of the podiatry statutes is primarily limiting in nature is made clear by General Statutes § 20-63 which provides that "[n]o person granted

a certificate under this chapter shall display or use the title 'Doctor' or its synonym without the designation 'Podiatrist' and shall not mislead the public as to the limited professional qualifications to treat human ailments." Further, among the grounds for revocation of a podiatrist's license or for disciplinary action against a podiatrist, General Statutes § 20-59 (9) includes "undertaking or engaging in any medical practice beyond the privileges and rights accorded to the practitioner of podiatry by the provisions of this chapter . . . ." A final example of such a limitation is the provision in § 20-50, as amended by Public Acts 1976, No. 76-99, authorizing "the practice of surgery upon the feet, provided if an anesthetic other than a local anesthetic is required, such surgery shall be performed in a general hospital accredited by the Joint Commission on Accreditation of Hospitals by a licensed podiatrist who is accredited by the credentials committee of the medical staff of said hospital to perform podiatric surgery in conformance with rules promulgated by the chief of the surgical department of said hospital, taking into account the training, experience, demonstrated competence and judgment of each such licensed podiatrist, and *such podiatrist shall comply with such rules . . . ."* (Emphasis added.) The subjection of podiatrists to hospital rules is a striking example of a legislative intent to restrain any expansion of the scope of podiatry practice that is not statutorily authorized. We conclude, therefore, that it was not the intention of the legislature to empower the board to define the scope of podiatry practice in Connecticut.

The podiatrists and the board also contend that the term "foot" should be construed according to its technical or anatomical definition, and be understood to include the ankle.[7] We discern no support for this position in either the statute or case law.

---

[7] In its declaratory ruling, the board found that "the ankle and foot are inseparable." In so finding, the board expressly credited the testimony of

All parties, as well as the trial court, cite *Rivera* v. *I. S. Spencer's Sons, Inc.*, 154 Conn. 162, 223 A.2d 808 (1966). *Rivera* involved compensation for disfigurement under the then Workmen's Compensation Act, General Statutes (Rev. to 1962) § 31-308. We were asked to determine whether the phrase "legs below the knees" in the statute included the foot. We found that, in common usage, the leg sometimes does and sometimes does not include the foot, but concluded that the issue could not be resolved solely on the basis of common usage. Our examination of the legislative history disclosed several amendments expanding the coverage, under the disfigurement provisions, by the enumeration of additional specific portions of the body, consistent with increasing exposure of modern dress. Bearing in mind that a scar on the foot was less likely to be exposed to view than one above the foot but below the knee, we concluded that the foot was not contemplated by the statutory language. Id., 164–66. *Rivera* is nonetheless inapposite to the present case, since the result in *Rivera* was compelled by legislative development quite different from that underlying the podiatry statutes.

The podiatrists rely heavily on *Finoia* v. *Winchester Repeating Arms Co.*, 130 Conn. 381, 385, 34 A.2d 636 (1943), in which we interpreted "hands" as used in a workers' compensation statute in its common anatomical sense as including the wrist and not the forearm. *Finoia*, like *Rivera*, sheds no light on the case before us. In *Finoia*, the question presented was whether, in the context of an award of compensation for disfigurement, the term "hand" was to be accorded its common meaning or a broader one, suggested by its use in the statutory provisions covering loss of use of a member, to include the forearm. Id., 382–83. Based on the intent we found in the history of the workers' compensation

Gary P. Jolly, D.P.M., who stated that it is impossible, from a clinical standpoint, to treat the foot as separate from the ankle.

statutes, we concluded that different legislative purposes were reflected in the loss of use and disfigurement provisions and that application of the broader definition was unwarranted. Id., 383–84. As the podiatrists note, we stated, in *Finoia,* that "hand," when used in its common anatomical sense, included the wrist but not the forearm. We can see no basis, however, for translating that statement into a declaration that the legislature intended the foot to include the ankle within the meaning of the podiatry statutes.

The podiatrists also propose that we adopt the Washington Court of Appeals' reasoning in *Jaramillo* v. *Morris,* 50 Wash. App. 822, 750 P.2d 1301, reh. denied, 110 Wash. 2d 1040 (1988). In *Jaramillo,* a podiatrist was sued for malpractice in ankle surgery. The trial court refused to submit to the state podiatry board the question of whether the ankle surgery was outside the scope of the podiatrist's license, and held that "[i]t is plain to see from the exhibits and from the affidavits of medical experts that where the leg bones end the foot begins and vice versa." Id., 829. The Court of Appeals found this refusal to be error, citing the special competence of the board to determine the meaning of the ambiguous term "foot." In so ruling, the court relied on the doctrine of primary jurisdiction which "does not displace the jurisdiction of a court, but merely allocates power between courts and agencies to make initial determinations; the court normally retains power to make the final decision." Id., 828. In reaching its conclusion, the *Jaramillo* court stated that "[t]his is not a case . . . wherein the practitioners of a medical specialty are attempting to expand their license authority beyond statutory bounds." Id., 831.

We find *Jaramillo* inapplicable to this case and conclude that the term "foot" should be construed accord

ing to its commonly understood meaning. In light of our statutory scheme governing podiatry practice, the construction we give to the term "foot" must not expand the scope of podiatry practice beyond the intent of the legislature. Moreover, § 20-50 expressly authorizes treatment of foot ailments and performance of surgical procedures, other than amputation, on the foot or feet and makes no mention of the ankle, nor has treatment of the ankle been expressly included in the definition of podiatry practice in any of the predecessors to § 20-50. Had the legislature intended to include the ankle in the definition of "foot," it could easily have done so. "The intent of the legislature, as this court has repeatedly observed, is to be found not in what the legislature meant to say, but in the meaning of what it did say. *Frazier* v. *Manson,* 176 Conn. 638, 642, 410 A.2d 475 (1979); *Kulis* v. *Moll,* 172 Conn. 104, 110, 374 A.2d 133 (1976); *Colli* v. *Real Estate Commission,* 169 Conn. 445, 452, 364 A.2d 167 (1975); *United Aircraft Corporation* v. *Fusari,* 163 Conn. 401, 410–11, 311 A.2d 65 (1972). Where there is no ambiguity in the legislative commandment, this court cannot, in the interest of public policy, engraft amendments onto the statutory language." *Burnham* v. *Administrator,* 184 Conn. 317, 325, 439 A.2d 1008 (1981).

We, therefore, conclude that the trial court did not err in sustaining the plaintiffs' appeal and that it properly relied on common usage and the dictionary definition of "foot" in construing General Statutes § 20-50.

There is no error.

In this opinion the other justices concurred.