TOWN OF SOUTHINGTON v. CONNECTICUT STATE BOARD
OF LABOR RELATIONS ET AL.
(13494)

PETERS, C. J., HEALEY, SHEA, CALLAHAN, GLASS, COVELLO and HULL, Js.

Argued January 3—decision released March 28, 1989

*Donald W. Strickland,* for the appellant (plaintiff).

*Joseph M. Celentano,* assistant counsel, with whom was *Barbara J. Collins,* for the appellees (defendants).

*George C. Hastings, Cynthia J. Bates* and *Daniel F. Sullivan* filed a brief for the Connecticut Conference of Municipalities as amicus curiae.

HULL, J. The dispositive issue in this case is whether the state board of labor relations erred in deciding that the positions of tax assessor, building official, town planner, tax collector and youth counselor in the town of Southington were not department heads within the meaning of General Statutes § 7-467, as amended by Public Acts 1983, No. 83-503, and therefore were not excluded from collective bargaining with the town. We concur with the decision of the board and conclude that the Superior Court did not err in dismissing the town's appeal from the board's decision.

The background of this case is as follows. On September 12, 1983, the defendant union, Local 818 of Council 4, American Federation of State, County and Municipal Employees (AFSCME), AFL-CIO,[1] filed with the defendant state board of labor relations (board) a petition seeking to represent all supervisory employees who worked for the town of Southington. On March 12, 1984, the board issued an order of election

---

[1] Council 4, AFSCME, AFL-CIO is also a separately named defendant in this case.

for union representation that included fourteen supervisory positions in the town, among them the five positions disputed in this case. The town challenged the eligibility of ten of the fourteen employees, claiming that they were "department heads," who were prohibited from bargaining collectively under the Municipal Employees Relations Act (MERA), General Statutes § 7-467 et seq.[2] The election was held on April 10, 1984, and the town again challenged the ballots of certain town officials, including the disputed five positions. The challenged ballots were sealed pending a determination by the board. Hearings on the town's objections and challenges were held by the board. In its decision (number 2451) issued on December 26, 1985, the board determined that the positions of sewer superintendent and superintendent of highways were "department heads" within the meaning of Public Acts 1983, No. 83-503 (codified as General Statutes § 7-467)[3]

---

[2] Access to collective bargaining under the Municipal Employee Relations Act is limited to "employees," defined by General Statutes § 7-467 (2) as follows: " 'Employee' means any employee of a municipal employer, whether or not in the classified service of the municipal employer, *except* elected officials, administrative officials, board and commission members, certified teachers, part-time employees who work less than twenty hours per week on a seasonal basis, *department heads* and persons in such other positions as may be excluded from coverage under sections 7-467 to 7-477, inclusive, in accordance with subdivision (2) of section 7-471 . . . . " (Emphasis added.)

[3] "[General Statutes] Sec. 7-467. COLLECTIVE BARGAINING. DEFINITIONS. When used in sections 7-467 to 7-477, inclusive:

"(1) 'Municipal employer' means any political subdivision of the state, including any town, city, borough, district, district department of health, school board, housing authority or other authority established by law, and any person or persons designated by the municipal employer to act in its interest in dealing with municipal employees;

"(2) 'Employee' means any employee of a municipal employer, whether or not in the classified service of the municipal employer, except elected officials, administrative officials, board and commission members, certified teachers, part-time employees who work less than twenty hours per week on a seasonal basis, department heads and persons in such other posi-

and therefore were excluded from the collective bargaining unit, but found that the remaining challenged positions, including the five disputed positions, were not "department heads" and thus were properly within the collective bargaining unit. Thereafter, the challenged ballots were opened and the board determined that a majority of the town's eligible supervisory employees had voted in favor of union representation. Subsequently, on January 9, 1986, the board issued another decision (number 2451-A) certifying the union as the exclusive bargaining representative of the supervisors in the town.

On January 29, 1986, the union demanded that the town negotiate a collective bargaining agreement for all of the employees in the supervisors' bargaining unit. At the first bargaining session, the town refused to bargain with the union over the five disputed positions. The union then filed an unfair labor practice charge against the town, with the board, pursuant to General Statutes § 7-470 (a) (4), for its refusal to bargain. On June 4, 1986, the board issued decision No. 2498 ordering the town to bargain with the union over the dis-

---

tions as may be excluded from coverage under sections 7-467 to 7-477, inclusive, in accordance with subdivision (2) of secton 7-471;

"(3) 'Seasonal basis' means working for a period of not more than one hundred twenty calendar days in any calendar year;

"(4) 'Department head' means an employee who heads any department in a municipal organization, has substantial supervisory control of a permanent nature over other municipal employees, and is directly accountable to the board of selectmen of a town, city or borough not having a charter or special act form of government, or to the chief executive officer of any other town, city or borough;

"(5) 'Department' means any major functional division in a municipal organization, notwithstanding the provisions of any charter or special act to the contrary;

"(6) 'Employee organization' means any lawful association, labor organization, federation or council having as a primary purpose the improvement of wages, hours and other conditions of employment among enployees of municipal employers."

puted positions. On June 26, 1986, the town appealed that decision to the Superior Court pursuant to General Statutes § 4-183. The trial court defined the sole issue as whether the board's decision was rendered in accordance with the definition of "department head" contained in General Statutes § 7-467 (4). In affirming the board's decision and dismissing the town's appeal, the court stated that it gave "great deference" to the board's construction of the statute. The town then appealed to the Appellate Court, and we transferred the appeal to ourselves pursuant to Practice Book § 4023.

It is particularly useful in this case to summarize the board's comprehensive and scholarly decision No. 2451. The term "department head" was not defined under MERA until the passage of Public Acts 1983, No. 83-503, which became effective on October 1, 1983. During the period from 1978 to 1983, the board attempted to fashion a reasonable definition of "department head" on a case-by-case basis. In deciding whether a person was a "department head," the board had developed several guiding principles, among them: (1) the word "department" as used in MERA is a term of art referring to the largest divisions of government; (2) a person claimed to be excluded as a "department head" must exercise supervision over a substantial number of employees; (3) if a town charter identifies a division of government as a department, the board will consider that identification, but not be bound by it; and (4) the exception is to be narrowly construed.

The board's decision took note of four changes from existing practice contained in Public Acts 1983, No. 83-503. First, under the act, provisions of local charters or of special acts became irrelevant to the determination of whether a division of government constitutes a "department." Second, to qualify as a "department head" under the act, a person must be directly account-

able to the board of selectmen or to the chief executive officer of a town. Third, the act substituted a new test for supervisory control that, instead of looking to the number of supervised employees, required that a department head must have "substantial supervisory control of a permanent nature over other municipal employees." The board stated that it had not before required that, to be a department head, an individual have a degree of supervisory control greater than that of non-department head supervisors. In view of the new act, however, the board decided that to be a department head, one must do more than merely meet the definition of supervisor, one must actually have substantial supervisory control. Finally, the board analyzed the impact of the change from its definition of a "department" as being one of the largest divisions of government to being, under the act, a "major functional division" of government. The board decided that: (1) this is an expansion of its prior definition of a "department"; (2) the concept of "major functional division" must be considered within the context of the particular municipality in question; (3) what might be a "major functional division" in a small town, may not be a "major functional division" in a large city; (4) whether a division is major must be determined in view of objective factors such as the division's budget, staff size, and control over the use of municipal resources; and (5) it is inappropriate for the board to base its decision upon its own notions of what, in relative terms, is a more or less important function of local government. The board rejected the town's argument that the local subjective view of the importance of a function should control. It found that view relevant, but only as reflected through the objective factors described above.

The board then listed the following criteria for determining whether a person is a "department head" under the act: "(1) Does the person report directly to the

Board of Selectmen or the Chief Executive Officer of the municipality, i.e. with no intervening level of authority? (2) Does the person exercise a degree of permanent supervisory control over other municipal employees which is greater than what is necessary to qualify the person merely as a supervisor under the Act? (3) Does the person head a division of municipal government which in terms of budget, staff size, and control of the use of municipal resources is a major functional division of that municipality's government?" The board ruled that each of these questions must be answered in the affirmative for a person to meet the definition of "department head" under the act.

Applying these criteria, the board found two positions that the town had challenged to be "department heads": the sewer superintendent and the superintendent of highways. Neither position is involved in this appeal. With respect to the five disputed positions, the board found that they were not in charge of "major functional divisions" of the town. Therefore, none of the five was a "department head" and all could be included in a bargaining unit of supervisors. Specifically, the board found the following concerning each of the five positions: (1) tax assessor; three other employees; comparatively small budget; (2) building official; four other employees; comparatively small budget; (3) town planner; two other employees; budget of $69,000; (4) tax collector; four other employees; comparatively small budget; and (5) youth counselor; three other employees; comparatively small budget. Finally, the board noted that with regard to the employees holding the first four of these positions, although each performed functions that concerned considerable municipal resources, none of them controlled the use to which those resources were put. The board then ordered the challenged ballots opened. As a result of the board's decision, out of the ten ballots cast, what had been a

vote of three in favor of representation and zero against, became a vote of eight in favor of representation, two void ballots, and zero opposed to representation. It was this vote in favor of representation that precipitated this litigation.

After being ordered by the board to bargain with the union over the disputed positions, the town appealed to the Superior Court. General Statutes § 4-183. In upholding the board's decision, the trial court gave "great deference" to the board's interpretation of Public Acts 1983, No. 83-503 and found that "[t]he interpretation of department head and functional division as utilized by the labor board does not constitute an arbitrary or capricious characterization or an abusive or unwarranted exercise of their discretion."

On appeal to this court, each party cites extensive facts to buttress its position. Many of the facts claimed by the parties, however, were not found by the board or the trial court. We must therefore cull out those facts agreed upon, admitted, undisputed or contained in exhibits. Southington is governed by a council-manager form of government. The town manager is the chief executive officer of the town and is directly responsible for the management of the individual departments within the town. The town charter provides for each of the first four disputed positions, designating each such division as a department. The youth counseling department was created in 1973 after the charter was adopted. Each of the employees holding a disputed position is appointed by and reports directly to the town manager. These appointments are made without the approval of any other person or entity.

The town cites numerous examples of local practices to support its claims that it has treated each of the five disputed positions as a department head, including: (a) listing of the positions as separate departments in the

annual reports and the local telephone directory; and (b) defining the positions in the town's personnel rules and regulations as those of persons responsible for directing the operations of a major organizational unit of town government. The town then cites seventeen examples of how, locally, the disputed positions carry responsibilities similar to those of a department head. The town thereafter in its brief describes the functions of each of the disputed positions to demonstrate how important each is to local government. The union, whose counterstatement of facts was adopted by the board, argues other detailed facts, not agreed upon by the parties, which it claims show that none of the disputed positions is a major functional division of the town. Contrary to the town, the union then analyzes each of the disputed positions with claimed facts that it argues tend to show that the positions in question were not those of department heads.

The town employs a shotgun approach in its appeal, claiming that the labor board's decision was: (1) in violation of statutory provisions; (2) affected by error of law; (3) clearly erroneous in view of the reliable, probative and substantial evidence on the whole record; and (4) arbitrary. Although the town stated the issues in its brief in six separate paragraphs,[4] they substantially

[4] "1. Did the court err in affirming the decision of the Connecticut State Board of Labor Relations to include in the collective bargaining unit the five department heads (Tax Assessor, Tax Collector, Building Official, Youth Counselor and Town Planner) in the Town of Southington?

"2. Did the court err in finding that Public Act 83-503 did not establish a clear mandate excluding the Town of Southington's five department heads from the collective bargaining unit?

"3. Did the court err by ruling that the decision of the Connecticut State Board of Labor Relations including the Town of Southington's five department heads in the collective bargaining unit was not arbitrary, capricious or an unwarranted abuse of its discretion?

"4. Did the court err by failing to find that the Connecticut State Board of Labor Relations acted illegally and beyond its statutory mandate by ignor-

overlap. For purposes of clarity, we will consider the all-embracing issue to be whether the labor board erred in deciding that the five disputed positions were not those of "department heads" within the meaning of General Statutes § 7-467, as amended by Public Acts 1983, No. 83-503, and therefore were not excluded from the collective bargaining unit of supervisory town employees.

"The standard of judicial review of administrative agency rulings is well established. . . . The trial court may not retry the case or substitute its judgment for that of the agency on the weight of the evidence or questions of fact. General Statutes § 4-183 (g) . . . . Rather, an agency's factual and discretionary determinations are to be accorded considerable weight by the courts. *Connecticut Hospital Assn., Inc.* v. *Commission on Hospitals & Health Care,* 200 Conn. 133, 140, 509 A.2d 1050 (1986); *Board of Aldermen* v. *Bridgeport Community Antennae Television Co.,* 168 Conn. 294, 298–99, 362 A.2d 529 (1975); *Westport* v. *Norwalk,* 167 Conn. 151, 355 A.2d 25 (1974).

"On the other hand, it is the function of the courts to expound and apply governing principles of law. *N.L.R.B.* v. *Brown,* 380 U.S. 278, 291, 85 S. Ct. 980, 13 L. Ed. 2d 839 (1965); *International Brotherhood of Electrical Workers* v. *N.L.R.B.,* 487 F.2d 1143, 1170–71 (D.C. Cir. 1973), aff'd sub nom. *Florida Power*

ing the requirements of Public Act 83-503 and including the Town of Southington's five department heads in the collective bargaining unit?

"5. Did the court err by failing to consider the disparate impact on the smaller and less wealthy towns in the State of Connecticut which resulted from the decision of the Connecticut State Board of Labor Relations to include the five department heads of the Town of Southington in the collective bargaining unit?

"6. Did the court err by failing to rule that the decision of the Connecticut State Board of Labor Relations to include the five department heads in the Town of Southington was contrary to law and clearly erroneous in light of the reliable, probative, and substantial evidence?"

& *Light Co.* v. *International Brotherhood of Electrical Workers,* 417 U.S. 790, 94 S. Ct. 2737, 41 L. Ed. 2d 477 (1974); *Connecticut Hospital Assn., Inc.* v. *Commission on Hospitals & Health Care,* supra; *Real Estate Listing Service, Inc.* v. *Real Estate Commission,* 179 Conn. 128, 138–39, 425 A.2d 581 (1979). This case presents a question of law turning upon the interpretation of a statute. . . . Such a question invokes a broader standard of review than is ordinarily involved in deciding whether, in light of the evidence, the agency has acted unreasonably, arbitrarily, illegally or in abuse of its discretion." *State Medical Society* v. *Board of Examiners in Podiatry,* 208 Conn. 709, 717–18, 546 A.2d 830 (1988).

In *New Haven* v. *Freedom of Information Commission,* 205 Conn. 767, 773–74, 535 A.2d 1297 (1988), we stated: "Ordinarily, the construction and interpretation of a statute is a question of law for the courts where the administrative decision is not entitled to special deference, particularly where, as here, the statute has not previously been subjected to judicial scrutiny or time-tested agency interpretations." Neither the board nor the courts have previously ruled on the issue in this case. Accordingly, no special deference is due the board's construction of Public Acts 1983, No. 83-503.

In support of its position, the town relies almost exclusively on the legislative history of the act. "Our principal objective in construing statutory language is to ascertain the apparent intent of the legislature. *Rawling* v. *New Haven,* 206 Conn. 100, 105, 537 A.2d 439 (1988)." *State Medical Society* v. *Board of Examiners in Podiatry,* supra, 721. "When the words of a statute are plain and unambiguous, we need look no further for interpretive guidance because we assume that the words themselves express the intention of the legislature. . . . When we are confronted, however, with ambiguity in a statute, we seek to ascertain the

actual intent by looking to the words of the statute itself
. . . the legislative history and circumstances sur-
rounding the enactment of the statute . . . and the
purpose the statute is to serve." (Citations omitted.)
*Rhodes* v. *Hartford,* 201 Conn. 89, 93, 513 A.2d 124
(1986).

The legislative history of Public Acts 1983, No. 83-503
discloses the following. The act originated in the legis-
lature as House Bill No. 5540. The primary purpose of
the bill was to define the term "department head" for
the labor board. 26 H.R. Proc., Pt. 6, 1983 Sess., pp.
2262–63. In the House of Representatives, Represen-
tative Richard O. Belden proposed to clarify the defi-
nition of "department head" by adding to it a list of
twenty-eight specifically designated department heads
that would be excluded from the collective bargaining
process; id., p. 2261; but that list was later deleted from
the bill at the insistence of Senator Joseph H. Harper,
Jr. Senator Harper stated that a definition that
included such a listing of department heads to be
excluded from the collective bargaining process "would
supersede home rule prerogatives that municipalities
currently have to define and determine their own
departments." 26 S. Proc., Pt. 8, 1983 Sess., p. 2651.
He intended that the labor board should "determine
on a case by case basis whether or not that entity the
individual is the head of is, in fact, [a] department
. . . . " Id., p. 2653. The town argues that Senator
Harper's remarks show a legislative intent to allow
municipalities to define their own departments. When
asked, however, whether his proposed definition of
"department head," without the department heads
expressly listed, was a broader definition, Senator
Harper responded that he was "not certain whether
what remains is broader." Id.

Upon return of the bill with Senator Harper's amend-
ment to the House, Representative William A. Kiner

added another amendment defining a "department" as "any major functional division within a municipal organization, notwithstanding the provisions of any charter or special act to the contrary." 26 H.R. Proc., Pt. 20, 1983 Sess., p. 7084. That definition of "department" was incorporated in Public Acts 1983, No. 83-503. No further illumination of legislative intent is apparent in the record.

We conclude that the legislation resulted in a new statutory definition of "department head" hammered out in typical legislative fashion, reflecting various political and social viewpoints, and shedding little light on the legislative intent concerning the meaning of that term. Accordingly, we discern neither a mandate for broadening the definition of "department head," nor evidence of an intent to narrow it. For our purposes, the legislative intent is essentially neutral.

We thus return to the bedrock of statutory construction, the words used by the legislature. "In the construction of the statutes, words and phrases shall be construed according to the commonly approved usage of the language; and technical words and phrases, and such as have acquired a peculiar and appropriate meaning in the law, shall be construed and understood accordingly." General Statutes § 1-1 (a). "Where a statute does not define a term, it is appropriate to look to the common understanding expressed in the law and in dictionaries." Doe v. Manson, 183 Conn. 183, 186, 438 A.2d 859 (1981).

The town directs our attention to the definition of "department," defined as "any major functional division in a municipal organization . . . . " General Statutes § 7-467 (5). Defining the word "major" is not as difficult as the town claims. Every school boy knows the difference between the major leagues and the minor leagues. The word "major" has been defined as

"greater in dignity, rank, importance or interest . . . greater in numbers, quantity or extent." Webster's Third New International Dictionary. The determination of which municipal functions are "major" is a particularly suitable task for the board, which by its very nature is sensitive to the labor-management implications of its decision and knowledgeable of the precedents in this area.

The gist of the town's argument on this point is that if a function is "important" to the town it must automatically be a "major functional division" of the town within the meaning of the statute. To accept this argument would be to obliterate the statutory definition. It would subject the MERA's statutory framework for determining which supervisors may be included in the collective bargaining process to the whims of a purely local and subjective definition of what is a "department" and a "department head." To follow the town's claim to its logical conclusion, the town could designate the high school football scorekeeper a department head since, as long as he had one assistant and met the other criteria established by the board, the town could claim the department of scorekeeping as a "major functional division."

The town further claims that a proper determinative of whether a municipal division is "major" must be the proportion of its municipal resources dedicated to that division. It asserts that any argument that the departments in question are not major due to small size and budget must fail. This argument is tilting at windmills. The board's decision reflects exactly the analysis that the town claims should have been made. The board made detailed findings as to each of the five disputed positions, comparing the functions, number of employees, and budget, with other positions such as superintendent of sewers and superintendent of highways, which it had already found to be major functional divi-

sions. Our view of this case does not in any way suggest that the five disputed positions are not important to the town of Southington, or any town. It is obvious that without a tax collector or tax assessor, for example, no town could function. But the mere necessity of such a position does not automatically make it a major functional division of the town under the statute.

The town also claims that the board's decision failed to recognize the change mandated by Public Acts 1983, No. 83-503, in that prior decisions of the board referred to the "largest" departments in a municipality when determining whether a person qualified as a department head, whereas the statute now requires that a person must be the head of a "major functional division." It contends that the new definition was a conscious decision on the part of the legislature to make a substantial change in the process. We observe that the board's decision did note four changes effectuated by the amendment. We do not, however, read the legislature's action as making the substantive change in the law claimed by the town. The concept of "largeness" of a municipal function previously utilized by the board is subsumed in the term "major functional division." The removal of the relative size of a municipal function in budget and number of employees from the determination of a "major functional division" would once again render the words an empty formula.

Finally, the town argues that the board's failure to exclude the five disputed positions creates an unfair and discriminatory impact on smaller and less wealthy towns. We do not consider this argument for three reasons. First, the trial court's memorandum of decision did not consider this issue. "The [appellant] . . . did not . . . seek, by motion for articulation in the trial court or this court; Practice Book §§ 4051, 4061; to have the trial court address this issue. . . . It remains the appellant's responsibility to furnish an adequate appel-

late record. Practice Book § 4061. Because the deficiency of the record regarding this claim should have been remedied by the [appellant], we will not remand the case to the trial court for rectification. *Stroiney* v. *Crescent Lake Tax District,* 205 Conn. 290, 295–96, 533 A.2d 208 (1987); *Steve Viglione Sheet Metal Co.* v. *Sakonchick,* 190 Conn. 707, 714, 462 A.2d 1037 (1983). Therefore, we will not review this claim.'' (Citations omitted.) *McLaughlin* v. *Bronson,* 206 Conn. 267, 277–78, 537 A.2d 1004 (1988). Second, even if the issue were properly before this court, the town's claim ignores the fact that the board specifically noted this factor in its decision: ''[I]t is at least apparent from the debate in the House of Representatives that this idea of 'major functional division' is intended to be considered within the context of the particular municipality in question. For instance, what might be a major functional division in a small town, may not be a major functional division in a large city.'' Third, this issue is precisely the type of question that is properly considered ''across the street,'' that is, in the General Assembly.

We conclude that the board's decision was not in violation of statutory provisions, affected by error of law, or clearly erroneous in view of the reliable, probative and substantial evidence on the whole record. The court did not err in dismissing the town's appeal.

There is no error.

In this opinion PETERS, C. J., SHEA, CALLAHAN, GLASS, and COVELLO, Js., concurred.

ARTHUR H. HEALEY, J., dissenting. Contrary to the majority, I would conclude that the incumbents of the five disputed municipal positions of the town of Southington are ''department heads'' within the meaning of General Statutes § 7-467 (4) as amended by Pub-

lic Acts 1983, No. 83-503. Each position, therefore, in my view, is excluded from the definition of "employee" and thus is also excluded from the collective bargaining unit of supervisory town employees under the Municipal Employees Relations Act, General Statutes § 7-467 et seq.

In construing statutes, emphasis must be accorded the social and economic factors giving rise to legislation and the effect that a particular interpretation will have upon society. *Barrette* v. *Travelers Ins. Co.,* 28 Conn. Sup. 1, 7, 246 A.2d 102 (1968); see 2A J. Sutherland, Statutory Construction (4th Ed. Sands) § 54.07. Neither the board nor the trial court did this. A statute should not be interpreted in any way so as to thwart its purpose. *Evening Sentinel* v. *National Organization for Women,* 168 Conn. 26, 31, 357 A.2d 498 (1975); *McAdams* v. *Barbieri,* 143 Conn. 405, 419, 123 A.2d 182 (1956). The board and the trial court made such an interpretation.

The state labor relations board's interpretation of the "department exclusion" in this case undermines not only the purpose of this exclusion but also pays little heed to the policy effect of its decision in the collective bargaining process. Only recently has this court expressly pointed out with approval that "[t]he objective of the Taft-Hartley Act 'was to assure the employer of a loyal and efficient cadre of supervisors and managers independent from the rank and file.' *Shelofsky* v. *Helsby,* [32 N.Y.2d 54, 60–62, 295 N.E.2d 774, 343 N.Y.S.2d 98, appeal dismissed, 414 U.S. 804, 94 S. Ct. 60, 38 L. Ed. 2d 41 (1973)]." *State Management Assn. of Connecticut, Inc.* v. *O'Neill,* 204 Conn. 746, 754, 529 A.2d 1276 (1987). In *State Management Assn. of Connecticut, Inc.,* we went on, alluding to *Shelofsky,* to say that "[i]t is widely believed that this objective is equally applicable to and more important in the public sector." Id. In that case, we upheld the

exclusions of state employees designated as "managerial employees" or "managers" under General Statutes § 5-270 (g) from collective bargaining rights under the State Employees' Relations Act, and, in doing so, concluded that such exclusion bore "a rational relationship to a legitimate state end." Id., 757.

Of course, the statute involved in this case is not the same one addressed in *State Management Assn. of Connecticut Inc.*, but the collective bargaining considerations, including the policy behind the "department head" exclusion and the objectives fostered by such exclusions, are the same. The board's application of the "department head" exclusion in this case not only defeats the purpose behind the legislature's enactment of the exclusion, but, on this record, does not recognize certain significant pragmatic factors in construing the statutory definition of the term "department," i.e., "any major functional division in a municipal organization . . . . " General Statutes § 7-467 (5). The five disputed positions, practically, fiscally and administratively, qualify as "major functional division[s] of a municipal corporation." Despite the circumstance that a "department head" in Southington may seem insignificant in comparison to its analog in a large municipality, their respective roles in municipal government are equally vital even though such variables as their budget and the staff allocated to their departments might differ. For example, the tax collector in Southington is just as significant to that municipality as is the tax collector in Hartford or any other Connecticut municipality. In each case, the "department head" oversees a "*major functional division in a municipal organization.*" I am disturbed about the irresistible inference from the board's decision that smaller communities with smaller staff and smaller actual dollar budgets may presumptively be consigned to qualifying rarely for the "department head" exclusion.

The majority refuses to discuss the town's claim that the trial court erred in failing to discuss the application of the "department head" exclusion on the basis of budget and staff size. The town claims that the board's application of the exclusion unfairly discriminates against smaller towns. The trial court did not, as it should have, consider this issue after it was raised and briefed in the trial court by both parties. At the very least, this important public issue should be remanded to the trial court to rule on it.

Therefore, I dissent.