[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an action for the dissolution of a marriage. The parties married on August 10, 1991 in Montego Bay, Jamaica. They have resided continuously in this state for at least twelve months before the date of filing of the complaint; therefore, the court has jurisdiction. There are no minor children who are issue of this marriage.
I. STATEMENT OF FACTS
The plaintiff wife, Rosemary Fletcher, is a thirty-six year old licensed practical nurse. She and the defendant met while they were both in high school. The plaintiff left high school when she became pregnant CT Page 993 with the couple's only child, Karrel Fletcher, born August 26, 1983. Karrel does not live with either parent.
While the parties were still in Jamaica, the parties lived with their own families of origin. The plaintiff was employed at a variety of different occupations, including physician assistant and cosmetologist. Sometime in early 1990, the plaintiff immigrated to the United States. While working at local bakeries, she attended night classes. She eventually earned her high school equivalency diploma. Subsequently, the plaintiff received training as a certified nurse's aide. She was employed as a nurse's aide at the time of trial.
The defendant joined the plaintiff in Connecticut in December 1994. He lived with the plaintiff for a short time only, leaving the marital home after only five months. The plaintiff supplied virtually all of the family income. During their brief cohabitation, the defendant was violent and abusive. The parties have remained separated since April 1995.[1]
Subsequent to the separation, the plaintiff began a relationship with the father of her young son, Michael, born in January 1996.
Currently the plaintiff is in generally good health. She lives with a companion and their minor child in a small house on 49 Orange Street in Bridgeport, Connecticut. The plaintiff bought the property for $1.00 in an auction. The dwelling needed substantial rehabilitation.
The defendant has been sporadically employed during his relationship witt the plaintiff. In the early stages of this relationship, the defendant worked at various times as both a security guard and a bartender for the Sandals Resort in Montego Bay. Except for a ten month period of time in 1989 during which the plaintiff nursed the defendant while he convalesced after an operation, the parties lived separately in Jamaica, each with his or her own family members.
The defendant is currently employed as a cable television installer. He is in good health. As a result of a recent drug conviction, he faces possible deportation to Jamaica.
This court must address the causes of the marital breakdown. Although they have been in a relationship since 1983 and were married in 1994, this couple rarely lived together as husband and wife. Each was preoccupied with his or her own interests and concerns. Both parties share responsibility for this marital breakdown.
II JAMAICAN PROPERTY DISPUTE
A. Relevant Facts CT Page 994
The principal dispute in this case involved property owned by neither of the litigants. In 1986, while they both resided in Jamaica, this couple began building a small house onto property owned by the defendant's grandmother. Although they had permission to build the structure, neither had title to the property. Neither could establish a legal interest in the property. They merely expended funds. The bulk of the money, approximately $25,000 in Jamaican dollars,[2] came from the plaintiff. Upon the defendant's grandmother's death, the defendant's uncle and cousin inherited all the grandmother's property, including the additional small house.
In 1990 the parties began constructing a home on what the plaintiff referred to as "captured" or "wasted" land. This was undeveloped government property. Neither party had any title to this property. Neither could claim any interest in the land. According to the plaintiff, the hope was that after the home construction was complete, the government might eventually recognize the structure, transfer title to the homebuilder, and tax the property accordingly. There is no law that requires government officials in Jamaica to transfer title of that property. There was no guarantee that the government would ever relinquish its right to the land. The parties are, in effect, squatters.
The parties married in 1991.[3] In the months before that marriage, the plaintiff provided money and materials for the "captured" land construction project.[4] Progress was slow. Although the plaintiff supplied a steady stream of money, construction was hindered by inept contractors and by looters. Nevertheless, it is clear that the plaintiff supplied the bulk of the funds expended in this cycle of construction. The defendant's contribution was negligible.[5]
Vandalism and looting plagued the construction project.[6] By 1993, the plaintiff asked that the defendant board the entire building. Efforts began anew in 1997. As of the date of trial, there still was no significant progress. Whatever the intention of the parties, the reality of this situation is that the Jamaican land is still undeveloped.[7]
B. Legal Analysis
Connecticut General Statutes section 46b-81 governs the distribution of assets in a dissolution action.[8] As noted by the Connecticut Supreme Court in Krafick v. Krafick, 234 Conn. 783, 663 A.2d 365 (1995), "There are three stages of analysis regarding the equitable distribution of each resource: first, whether the resource is property within §46b-81 to be equitably distributed (classification); second, what is the appropriate method for determining the value of the property (valuation); CT Page 995 and third, what is the most equitable distribution of the property between the parties (distribution)." Krafick, 234 Conn. at 793.
The present case concerns the question of classification. The simple issue is whether either of these parties have the type of interest subject to distribution in a dissolution action.
Although section 46b-81 governs the distribution of property, it does not define that term. "`Where a statute does not define a term, it is appropriate to look to the common understanding expressed in the law and in dictionaries.'" Southington v. State Board of Labor Relations,210 Conn. 549, 561, 556 A.2d 166 (1989); see General Statutes § 1-1 (a).
In Krafick and subsequent cases, the Connecticut Supreme Court relied in part upon the definition of property found in Black's Law Dictionary. There the Court noted:
 Black's Law Dictionary (6th Ed. 1990) defines "property" as the term "commonly used to denote everything which is the subject of ownership, corporeal or incorporeal, tangible or intangible, visible or invisible, real or personal; everything that has an exchangeable value or which goes to make up wealth or estate. It extends to every species of valuable right and interest, and includes real and personal property, easements, franchises, and incorporeal hereditaments. Krafick, 234 Conn. at 794.
This court recognizes that nothing in relevant case law or the legislative history of § 46b-81 indicates intent to narrow the plain meaning of "property" from its ordinarily broad and comprehensive scope. It further recognizes that interpreting the term property broadly is consistent with the purpose of equitable distribution statutes generally. Krafick, 234 Conn. at 795 — 796. Nevertheless, there are some restrictions.
In Bender v. Bender, 258 Conn. 733, ___ A.2d ___ (2001), the Connecticut Supreme Court discussed the relationship between traditional property principles and the distribution of marital assets. There the Court noted:
 The cases reflect a common theme, namely, that in determining whether a certain interest is property subject to equitable distribution under [section] 46b-81, we look to whether a party's expectation of a benefit attached to that interest was too speculative CT Page 996 to constitute divisible marital property . . . In cases in which an interest was so speculative as to constitute a mere expectancy, we concluded that it was not property subject to equitable distribution; whereas, in cases in which an interest was not so speculative as to constitute a mere expectancy, but rather a present existing interest in property, we treated it as property subject to equitable distribution. Bender, 258 Conn. at 748.
The narrow question before this court is whether the parties' interest in the Jamaican property is an existing enforceable right or nothing more than an opportunity to attain property in the future. Bender,258 Conn. at 749. Unfortunately, despite the sums expended, primarily by the plaintiff, this court must conclude that in the present case, a property interest is presently non-existent. It may never exist. See Rubin v.Rubin, 204 Conn. 224, 229, 527 A.2d 1184 (1987). It is' not the type of interest that a person has acquired in specific benefits. Rubin,204 Conn. at 231, citing Board of Regents v. Roth, 408 U.S. 564, 576 (1972). Rather, it is a dream that, although lovely, is not subject to distribution.
Here the government of Jamaica owns the property at issue. No order of this court can affect property distribution in that nation. This court certainly cannot order Jamaica to transfer its interests in that land. All this court can address is the potential interest in future acquisition.
The court finds the evidence by these parties, testimony concerning their hopes for the future, is too speculative. It certainly lacks the probative value necessary to have it considered as a factor in determining an appropriate assignment of property pursuant to § 46b-81 of the General Statutes. Therefore, the court will not enter any orders concerning the Jamaican property. The parties are left to the remedies available in that country.
III. ORDERS
The court has considered all the facts found in this memorandum of decision in light of the mandate of Connecticut General Statutes section46b-81. See Smith v. Smith, 185 Conn. 491, 493, 441 A.2d 140 (1981).[9]
The court, having considered all the evidence in light of all relevant statutory criteria, enters the following orders:
1. The marriage of the parties is dissolved on the grounds of an irretrievable breakdown. CT Page 997
2. Neither party shall be responsible for alimony to the other party.
3. The plaintiff shall own the property located at 49 Orange Street in Bridgeport, Connecticut free and clear from any claim by the defendant.
4. The plaintiff is awarded all of the furnishings located at the Orange Street residence
5. The parties are responsible for the debts listed on their separate financial affidavits. Each shall indemnify and hold the other harmless from any further liability from the debts as assigned to them by this order.
6. The plaintiff's interest in any retirement plan with her current employer shall remain hers free of any claims by the defendant. The defendant shall execute any document necessary to terminate any rights he may have in the plan as may be requested by the plaintiff.
7. The defendant's interest in a retirement plan with her current employer shall remain his free of any claims by the plaintiff. The plaintiff shall execute any document necessary to terminate any rights she may have in the plan as may be requested by the defendant.
8. Each party shall pay his or her own attorney's fees.
9. Except to the extent more specifically set forth herein, each order of the court is to be effectuated within thirty (30) days of the date of this decision.
10. Except to the extent more specifically set forth herein, each party shall retain all assets as shown on their respective financial affidavits free and clear of any claim or demand by the other, and each party shall be responsible for all liabilities as shown on their financial affidavits and shall indemnify and hold harmless the other party from liability therefore.
Judgment shall enter in accordance with the foregoing orders.
JULIA DiCOCCO DEWEY, JUDGE